# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARIA V. CARMONA,          )
                                )
      Plaintiff              )
                                )
        v.                )      Civil Action No. 05-1194(JGP)
                                )
JOHN W. SNOW, Secretary of the Treasury,  )
                                )
      Defendant.           )
_____ )

## MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Federal Rules"), defendant, John W. Snow, Secretary of the Treasury, moves for dismissal of plaintiff's conspiracy claim brought pursuant to 18 U.S.C. § 241 for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. Pursuant to Rules 12(b)(6) or 56 of the Federal Rules, defendant moves to dismiss or for summary judgment[1] on plaintiff's remaining claims - i.e., those brought pursuant to Title

---

[1]Plaintiff should take notice that any factual assertions contained in the affidavits in support of this motion will be accepted by the Court as true unless plaintiff submits her own declaration or other documentary evidence contradicting the assertions in the attached affidavits. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992) and Rule 56(e) of the Federal Rules of Civil Procedure which provide as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to

(continued...)

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Age

Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621.

In support of this motion, the Court is respectfully referred to the accompanying

memorandum of points and authorities and statement of material facts not in dispute. See

LcvR 7(a). A proposed order consistent with the relief requested in this motion is also

attached hereto. Id. at 7(c).

Date: September 30, 2005                    Respectfully Submitted,


                                           /s/ Kenneth L. Wainstein /dch
                                           _____
                                           KENNETH L. WAINSTEIN, D.C. BAR # 451058
                                           United States Attorney

                                           /s/ R. Craig Lawrence /dch
                                           _____
                                           R. CRAIG LAWRENCE, D.C. BAR # 171538
                                           Assistant United States Attorney

---

[1](...continued)
interrogatories, or further affidavits. When a motion for summary judgment
is made and supported as provided in this rule, an adverse party may not
rest upon the mere allegations or denials of the adverse party's pleading, but
the adverse party's response, by affidavits or as otherwise provided in this
rule, must set forth specific facts showing that there is a genuine issue for
trial. If the adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

/s/ Beverly M. Russell
_____

Of Counsel:                         BEVERLY M. RUSSELL, D.C. Bar #454257
Cynthia Langwiser, Esq.             Assistant United States Attorney
U.S. Department of the Treasury     U.S. Attorney's Office
                                    555 4th Street, N.W.
                                    Washington, D.C.  20530
                                    Ph:  (202) 307-0492

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARIA V. CARMONA,          )
                                   )
     Plaintiff             )
                                   )
     v.                  )       Civil Action No. 05-1194(JGP)
                                   )
JOHN W. SNOW, Secretary of the Treasury,  )
                                   )
     Defendant.          )
_____ )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Federal Rules"),

defendant, John W. Snow, Secretary of the Treasury, moves to dismiss plaintiff's conspiracy

claims brought pursuant to 18 U.S.C. § 241 for lack of subject matter jurisdiction.

Defendant also moves to dismiss this suit for failure to state a claim upon which relief can

be granted pursuant to Rule 12(b)(6) of the Federal Rules, or alternatively, pursuant to Rule

56, for summary judgment because there are no genuine issues in dispute and defendant is

entitled to judgment as a matter of law.

Plaintiff brought this suit pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act

("ADEA") of 1967, as amended, 29 U.S.C. § 621, et seq. but failed to cooperate with the

agency's investigation into her claims.  Accordingly, this civil suit should be dismissed in

entirety.  Additionally, the record demonstrates that certain of plaintiff's claims (i.e.,

conspiracy, the size of her office) are not cognizable under Title VII and the ADEA and

other claims (i.e., non-selections) should be dismissed because defendant had legitimate

nondiscriminatory reasons for the actions taken and plaintiff simply cannot demonstrate that

those reasons were pretext for discrimination and retaliation.  Defendant's bases for seeking

the relief requested herein are more fully set forth below.

## I.    STATEMENT OF FACTS

### A.    Plaintiff's Complaints

#### 1.    Administrative Complaint

On or around December 18, 2000, plaintiff filed an administrative complaint alleging

discrimination and retaliation.  Ex. 1, Individual Complaint of Employment Discrimination,

Dec. 18, 2000.  By letter dated May 17, 2002, Ms. Deborah W. Jenkins, Acting Director,

Treasury Complaint Center, informed plaintiff that the following claims were accepted for

investigation:

1)    Whether [plaintiff] was discriminated against based on her sex
(female), national origin (Hispanic), age, and retaliation when on
September 26, 2000, plaintiff was denied office space and
furniture commensurate with her position;

2)    Whether the plaintiff was discriminated against based on sex (female),
national origin (Hispanic), age, and retaliated against during the merit
promotion process when she applied and was not selected for the following
positions:

(a)    Deputy Assistant Inspector General for Program Audits under Vacancy
Announcement Number OIG-01-009;

2

      (b)    Deputy Assistant Inspector General for Program Audits under Vacancy Announcement Number OIG-01-043; and

      (c)    Supervisory Auditor under Vacancy Announcement Number OIG-01-044;

  3)    Whether the agency's hiring and promotion practice have adversely affected/impacted Hispanic employees, females, over the age of 40 in regard to selections for senior management positions at the grade 15 level and SES positions.

Ex. 2, Letter from Deborah W. Jenkins, Acting Director, to Mr. J. Steven Elbell (May 17, 2002).[2]

Plaintiff was also informed that she should notify Ms. Jenkins if she disagreed with the claims within five days of receipt of the May 17, 2002 letter. <u>Id.</u> In the same letter, plaintiff was instructed that she had a "responsibility to cooperate with the investigator in timely scheduling an appointment, meeting with an investigator, and providing written statements[,]" and that "failure to do so may result in the dismissal of the complaint for failure to cooperate." <u>Id.</u>, p. 2.

The Agency completed its administrative investigation of plaintiff's claims on or around August 5, 2002. Ex. 3, Investigative Report for TD Case No. 01-1155R and EEOC Appeal 01A20044. In the Investigative Report, the Investigator noted, plaintiff and her

---

[2]By separate letter also dated May 17, 2002, Ms. Jenkins informed plaintiff that her claims related to the administrative processing of her complaint and the agency's administration of EEO programs would not be investigated in accordance with 29 C.F.R. 1614.107(b). EEOC regulations require that an agency dismiss a claim that "alleges dissatisfaction with the processing of a previously filed complaint." 29 C.F.R. § 1614.107(a)(8).

representative "did not show up for the interview scheduled on Monday, July 8, 2002, 12:30

pm.  Regular and certified return receipt letters were sent to Representative, J. Steven

Elbell's address as well as [a] telephone voice message on June 7, 2002...During on-site

visit, [plaintiff's] manager advised Investigator that Mrs. Carmona was on annual leave all

week per request on June 10, 2002..." Id. at 7. The Investigator also noted that plaintiff

failed to "provide an affidavit after several attempts; therefore, the record contains limited or

no pretext argument for the [plaintiff]." Id. at 8.

### 2.      Civil Complaint

Plaintiff brought this suit, her third before this Court[3], alleging that she was subjected

to discrimination based upon her national origin (Hispanic) with special consideration due to

her status as being Cuban-American, sex (female), and age.  Compl., 1:9.[4]  Plaintiff also

alleges retaliation, and conspiracy to preclude plaintiff from exercising her civil rights to

equal employment opportunity in violation of 18 U.S.C. § 241.  Id. 21:29, 131, and 134:137.

Plaintiff alleges those claims described in her administrative complaint as well as others

which were not accepted by the Agency for investigation.  Plaintiff's allegations in her civil

suit include:

1)     denial of office space and furniture commensurate with her position, id.
       151:152;

---

[3]Plaintiff has apparently filed at least seventeen administrative complaints with her employer.  Compl., seventh page, n.3.

[4]Unless a specific page number is identified, the references to the complaint refer to the line numbers used by plaintiff in describing her allegations.

2)    manipulation of personnel system in violation of merit system principles, id. 152:153;

3)    impropriety with the handling and investigation of plaintiff's EEO administrative complaints, id. 138:145 and 160:161;

4)    failure to provide requested management and other training, id. 155;

5)    placement in non-pay status, id. 156;

6)    failure to provide notifications of personnel actions in a timely manner, id. 156:157;

7)    failure to correct overpayment in a timely manner, id. 157;

8)    failure to assign appropriate staffing, id. 157:158;

9)    failure to properly present results of work, id. 158;

10)   failure to implement Hispanic employment initiatives, id. 158:159;

11)   failure to address EEO-related issues identified by a 1989 task force, id. 159:160;

12)   Inspector General focus on one minority group, id. 161;

13)   allegation that Department of the Treasury materials fosters misconceptions about Hispanics, id. 161:162;

14)   breach of confidentiality, id. 163;

15)   preferential treatment of non-minority white employees, id. 163:164;

16)   claim that Departmental actions pit one minority group against another, id. 164;

17)   non-selection for the position of Deputy Inspector General ("DAIGA") under Vacancy Announcement No. OIG-01-009, id. 166:179;

5

18)    non-selection for the position of DAIGA under Vacancy Announcement No.
OIG-01-043, id.; and

19)    non-selection for the position of Supervisory Auditor under Vacancy
Announcement No. OIG-01-044, id.

**B.    Facts Related to Investigated Claims**

**1.    Dissatisfaction with Office Space**

On or around September 13, 2000, as the result of an office relocation, plaintiff

requested office space and furniture (wood grain rather than gray laminate) commensurate

with her position in the Office of Inspector General.  Ex. 5, E-Mail from Maria V. Carmona

to Donald R. Kassel (Sept. 13, 2000).  According to Marla A. Freedman, formerly Deputy

Assistant Inspector General for Audit and one of the individuals responsible for the office

relocation, determinations related to office space were based primarily on seniority.  Ex. 4,

Declaration of Marla A. Freedman at 3, July 19, 2002.  There were two exceptions -

(1) keeping disruptions to a minimum and (2) keeping related Directorates together if

possible.  Id.

Based on seniority, plaintiff was assigned the second largest/windowed GS-14 office

based on the drawing and the general location of her Directorate.  Id.  Shortly after moving

into her new office, plaintiff informed Ms. Freedman that her office in comparison with the

one next to it, which was assigned to Alex Best, another GS-14 audit manager, was some

inches smaller and requested to be switched.  Id.  Ms. Freedman did not measure the two

offices herself but believed they were comparable.  Ms. Freedman also noted (1) there were

6

several other employees who were in slightly larger/smaller spaces than commensurate with their grade - some with much more significant differences in space than plaintiff's, and (2) Mr. Best had already unpacked.  Id.  Ms. Freedman thus decided that plaintiff would not be moved because the office was dealing with enough disruption; however, plaintiff would be given the opportunity to move into other space in the future.  Id.   Consistent with this determination, plaintiff was offered two opportunities to move into larger space - the first in November 2001 and the second in May 2002 - but declined both offers.  Id. at 3 - 4.

     **2.**    **Non-Selection**

        **a.**    **Deputy Assistant Inspector General for Program Audits
             under Vacancy Announcement Number OIG-01-009**

Ms. Freedman was the recommending official for this position.  Based on her assessment of the information presented by each candidate, including the interview, Ms. Freedman recommended a candidate other than plaintiff for the position.   Ex. 4, Freedman Decl. at 6.   Notably, during the interviews, plaintiff provided general responses to the questions posed whereas the selectee responded in more specific terms and gave personal accomplishments to illustrate his answers.  Ex. 6, Freedman's Interview Notes.

        **b.**    **Deputy Assistant Inspector General for Program Audits
             under Vacancy Announcement Number OIG-01-043**

Plaintiff failed to make the best qualified list for the position of Deputy Assistant Inspector General for Program Audits under Vacancy Announcement Number OIG-01-043.  Ex. 4, Freedman Decl. at 6.   Among the thirty-three applicants for the position, twelve

were referred to the selecting official as the "Best Qualified." Ex. 7, Documents Related to

Executive Resources Board Recommendations of the "Best Qualified" Candidates. The

Executive Resources Board, tasked with reviewing and ranking the applications, scored

applicants from a low of 70 (five applicants) to a high of 100 (three applicants). Id. Nine

applicants received a score of 97. These applicants, along with those who scored 100, were

referred to the selecting official for consideration. Id. Plaintiff received a score of 94, and

was not referred for consideration. Id.

**c. Supervisory Auditor under Vacancy Announcement Number OIG-01-044**

Ms. Freedman was the selecting official for the Supervisory Auditor position. Ex. 4,

Freedman Decl. at 6. Because the position was for the National Director of Enforcement

Audits, Ms. Freedman selected Mr. Best based on his work in the enforcement audit area

and due to his direct prior work experience with one of Treasury's enforcement bureaus, the

Bureau of Alcohol, Tobacco and Firearms. Id. Ms. Freedman also considered Mr. Best's

audit achievements and accomplishments. Id. Specifically, Mr. Best led the President's

Committee on Integrity and Efficiency government-wide audit of debt collection

improvement act results - a job which involved more than ten other Offices of Inspector

General and which generated a significant amount of Congressional interest. Id. As

difficult as it was, Mr. Best met all time frames required of the assignment. Id.

Ms. Freedman also gave consideration to unsolicited positive and supportive comments

provided by Mr. Best's peers and subordinates. Id. Ms. Freedman noted that, while

plaintiff's work is thorough, it is generally not as timely as the work of others at her grade level. Id.

## II.    STANDARD OF REVIEW

### A.    Dismissal for Lack of Subject Matter Jurisdiction (Fed.R.Civ.P. 12(b)(1))

"A motion under 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'" Gardner v. U.S., No. CIV. A. 96-1467EGS, 1999 WL 164412, *2 (D.D.C. Jan. 29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) and cert. denied, 531 U.S. 1153 (2001), quoting, Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987); see also 4 Wright & Miller: Federal Prac. & Proc. § 1350 (R12)(2002 Supplement)("...subject matter jurisdiction deals with the power of the court to hear the plaintiff's claims in the first place, and therefore imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power.")  A court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint.  Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and  other extrinsic information, and ultimately weigh the conflicting evidence.  See id.; see also Cureton v. United States Marshal Service, 322 F.Supp.2d 23, 2004 WL 1435124, *2 (D.D.C. June 28, 2004).

**B.      Motion for Failure to State a Claim (Fed.R.Civ.P. 12(b)(6))**

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules should be

granted if the plaintiff can prove no set of facts in support of her claim that would entitle her

to relief.  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Although the plaintiff is given the benefit of all inferences that reasonably can be derived

from the facts alleged in the complaint, the court need not accept inferences that are not

supported by such facts, nor must the court accept plaintiff's legal conclusions cast in the

form of factual allegations. Id.  Additionally, if a party relies on matters outside the pleading

to support a motion to dismiss pursuant to Rule 12(b)(6), such motion is treated and

disposed as one for summary judgment pursuant to Rule 56 of the Federal Rules.

Fed.R.Civ.P. 12(b)(6).

**C.      Summary Judgment (Fed.R.Civ.P. 56)**

Summary judgment may be granted when the pleadings and evidence demonstrate

that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v.

Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  A genuine issue is one that could change the

outcome of the litigation.  See Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 243 (1986).

While all evidence and the inferences drawn therefrom must be considered in the light most

favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986), the nonmoving party - when faced with a summary judgment

motion - has the burden of establishing more than the "mere existence of a scintilla of evidence" demonstrating a genuine issue in dispute for purposes of defeating the moving party's motion.  See Lester v. Natsios, 290 F.Supp.2d 11, 19-20 (D.D.C. 2003), citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250.  As the Supreme Court has stated, "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex, 477 U.S at 323-324.

## III.    DISPOSITION UNDER TITLE VII AND THE ADEA

### A.    Discrimination Claims

The procedure for resolving a claim of discrimination such as the instant one is well-established.  Under the scheme first set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), the burdens of production first shift from employee to employer.  The plaintiff must first, by a preponderance of the evidence, establish a prima facie case of discrimination.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).  If the employee succeeds, the employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action.  See McDonnell Douglas, 411 U.S. at 802.

The Supreme Court has explained that the elements of a prima facie case of discrimination may differ from case to case.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 n.6 (1981).  The fundamental requirement, however, is that the

11

prima facie case, without additional proof to the contrary, give rise to an inference that the defendant's conduct was discriminatory. See Simens v. Reno, 960 F.Supp 6, 8-9 (D.D.C. 1997). As a general matter, therefore, to establish a prima facie case of discrimination based on race or sex under Title VII, a plaintiff must demonstrate by a preponderance of the evidence that (1) she was a member of a protected group, (2) an adverse employment action took place, and (3) the unfavorable action gives rise to an inference of discrimination. Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002).

Likewise, to make out a prima facie case of discrimination under the ADEA, a plaintiff must show that she: (1) belongs to the statutorily-protected age group (over 40), (2) suffered an adverse action, and (3) was disadvantaged in favor of a younger person. May v. Shuttle, Inc., 129 F.3d 165, 172 (D.C. Cir. 1997), cert. denied, 524 U.S. 927 (1998); Forman v. Small, 271 F.3d 285, 292 (D.C. Cir. 2001). The "younger person" referred to in the third requirement must be a person "considerably" younger than the plaintiff. See Crockett v. Richardson, 127 F.Supp. 2d 40, 46 (D.D.C. 2001); see also Beeck v. Federal Express Corp., 81 F. Supp.2d 48, 53 (D.D.C. 2001) ("To raise an inference of discrimination by showing that a younger person was favored, a plaintiff must point to a worker with a 'significant' or 'substantial' difference in age") (citing O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996)).

Once it is established that both parties have met their respective burdens of production (i.e., plaintiff by presenting a prima facie case and defendant by producing a

non-discriminatory reason for its actions), the burden shifting scheme becomes irrelevant.

Hicks, 509 U.S. at 510.  Then, the plaintiff must establish, by a preponderance of the

evidence, that age, "race, color, religion, sex, or national origin was a motivating factor for

any employment practice."  Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003), citing, 42

U.S.C. § 2000e-2(m); see also Phuong v. National Academy of Sciences, 927 F.Supp. 487,

489 (D.D.C. 1996)(To prevail under the ADEA, "plaintiff must establish by a

preponderance of the evidence that age was a determining or motivating factor in an adverse

employment action taken by her employer.")

     A plaintiff must present substantial and credible evidence of discrimination in order

to survive a motion for summary judgment.  See Greene v. Dalton, 164 F.3d 671, 675 (D.C.

Cir. 1999) ("Accepting [some] conclusory allegations as true, therefore, would defeat the

central purpose of the summary judgment device, which is to weed out those cases

insufficiently meritorious to warrant the expense of a jury trial."); Carpenter v. Federal Nat'l

Mortgage Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999) (if plaintiff merely shows that the

legitimate nondiscriminatory reason offered by the employer is a pretext for a decision

intending to cover up an unsavory reason -- but one that is not illegal under the

antidiscrimination law,  the plaintiff is not entitled to try issues of fact, and summary

judgment for the employer is appropriate.); Hastie v. Henderson, 121 F.Supp.2d, 72, 77

(D.D.C. 2000) aff'd, No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001)("To defeat a motion

for summary judgment, a plaintiff cannot create a factual issue of pretext with mere

13

allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'"); Woodruff v. DiMario, 164 F.Supp. 2d 1, 5 (D.D.C. 2001). Additionally, there will be "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." Weigert v. Georgetown University, 120 F.Supp.2d 1, 22 (D.D.C. 2000), quoting, Reeves v. Sanderson Plumbing Co., 530 U.S. 133 (2000).

### B.    Retaliation Claim

Title VII provides, in pertinent part, that it is unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). A prima facie case alleging retaliation or reprisal under Title VII is established when the plaintiff demonstrates that (1) she engaged in protected behavior; (2) she was subject to an adverse action by her employer; and (3) there is a causal link between the adverse action and the protected activity. Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985). If plaintiff is able to establish a prima facie case of retaliation, the analysis then follows that for a discrimination claim, i.e., plaintiff has the burden of proving that defendant's actions were taken for reasons other than those

offered, but instead, for a retaliatory purpose.  See, e.g. Freedman v. MCI

Telecommunications Corp., 255 F.3d 840, 844-845 (D.C. Cir. 2001).

## IV.    ARGUMENT

### A.    Plaintiff's Conspiracy Claim Should Be Dismissed for Lack of Subject Matter Jurisdiction, or Alternatively, Failure to State a Claim.

As an initial matter, the statute at 18 U.S.C. § 241 which addresses civil rights

criminal conspiracy violations does not give rise to a private right of action.  See Cok v.

Cosentino, 876 F.2d 1, 2 (1st Cir.1989) (no private right of action under 18 U.S.C. §§

241-242); Risley v. Hawk, 918 F.Supp. 18, 21 (D.D.C. 1996).  Further, the United States

cannot be sued without its consent (see, e.g. Ickes v. Fox, 300 U.S. 82, 96 (1937) and

Hercules v. United States, 516 U.S. 417, 422-423 (1996)) and the United States has not

consented to be sued under the civil rights statutes.[5]  See,e.g. Hohri v. United States, 782

F.2d 227, 245 n.43 (D.C. Cir. 1986), reh'g denied, 793 F.2d 304 (D.C. Cir. 1987), rev'd on

other grounds sub nom., United States v. Hohri, 482 U.S. 64 (1987); Unimex, Inc. v. United

States Dep't of Housing and Urban Dev., 594 F.2d 1060, 1061 (5th Cir.1979); Graves v.

U.S., et al., 961 F.Supp. 314, 318 (D.D.C. 1997); Biase v. Kaplan, 852 F.Supp. 268, 289-90,

n.18 (D.N.J.1994) ( "[N]either § 1985 nor any other provision of the Civil Rights Act may

provide the basis for an action against the United States nor a federal agency.") .

---

[5] 18 U.S.C. § 241 is the criminal counterpart to 42 U.S.C. § 1985.  See, e.g. Snyder v. I.R.S., 596 F.Supp. 240, 245 (N.D.Ind. 1984).

Additionally, plaintiff's conspiracy claim (Compl. 21:29, 131, and 134:137) must be dismissed because the exclusive remedy for her claims lies with Title VII or the ADEA.  See Brown v. General Services Administration, 425 U.S. 820, 835 (1976) (dismissing [42 U.S.C.] § 1981 claim and holding that "Section 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment"); see also Graves, 961 F.Supp. at 322.

Courts have extended the Brown reasoning "to reject litigants' efforts to initiate discrimination claims against the federal government under the Constitution or statutes other than Title VII." See, Brug v. National Coalition for the Homeless, 45 F. Supp. 2d 33, 42 (D.D.C. 1999) (dismissing § 1983, Fifth Amendment and Fourteenth Amendment claims); see also Kizas v. Webster, 707 F.2d 524, 542 (D.C. Cir 1983), cert. denied, 464 U.S. 1042 (1984) (Title VII "precludes actions [alleging employment discrimination] against federal officials for alleged constitutional violations as well as actions under other federal legislation."); Ward v. Kennard, 133 F.Supp.2d 54, 57 (D.D.C. 2000), recons. den. 200 F.R.D. 137 (D.D.C. 2001); Thorne v. Cavazos, 744 F. Supp 348, 351-52 (D.D.C. 1990); Graves v. U.S., 967 F.Supp. 572, 574 (D.D.C. 1997); Richards v. Merit Systems Protection Board, 739 F.Supp. 657, 659 (D.D.C. 1990)(Court rejected Plaintiff's constitutional claim since it raised the same discriminatory conduct as that under Plaintiff's Title VII claim, the latter statutory scheme serving as Plaintiff's exclusive remedy.)   Attempts by litigants to

16

bring age discrimination claims through statutes other than the ADEA have been similarly rejected by the Courts.  See, e.g. <u>Rattner v. Bennett</u>, 701 F.Supp. 7, 9 (D.D.C. 1988).

Plaintiff's attempt to establish the Court's jurisdiction over her discrimination claim through a statutory provision other than Title VII and the ADEA is impermissible and, as such, the claim should be dismissed for lack of subject matter jurisdiction or failure to state a claim.

**B.    Plaintiff's Complaint Should Be Dismissed in Its Entirety for Failure to Cooperate with the Agency's EEO Investigation.**

It is well-established that a plaintiff seeking to litigate an employment discrimination claim in federal district court must have actively cooperated in good faith in the EEO administrative process.  See <u>Hill v. Potter</u>, 352 F.3d 1142, 1145-1146 (7th Cir. 2002); <u>Crawford v. Babbitt</u>, 186 F.3d 1322, 1327 (11th Cir. 1999); <u>Briley v. Carlin</u>, 172 F.3d 567 (8th Cir. 1999); <u>Artis v. Greenspan</u>, 158 F. 3d 1301, 1306 (D.C. Cir. 1998); <u>Wilson v. Pena</u>, 79 F.3d 154, 164 (D.C. Cir. 1996); <u>Francis v. Brown</u>, 58 F.3d 191, 192 (5th Cir. 1995); <u>Greenlaw v. Garrett</u>, 59 F.3d 994, 997 (9th Cir. 1995); <u>Khader v. Aspin</u>, 1 F.3d 968, 971 (10th Cir. 1993); <u>Wrenn v. Department of Veteran's Affairs</u>, 918 F.2d 1073, 1078 (2d Cir. 1990), <u>cert. denied</u>, 499 U.S. 977 (1991); <u>Tanious v. Internal Revenue Service</u>, 915 F.2d 410, 411 (9th Cir. 1990); <u>Munoz v. Aldridge</u>, 894 F.2d 1489, 1492-1493 (5th Cir. 1990); <u>Boswell v. Department of the Treasury</u>, 1997 U.S. Dist. LEXIS 16175 (N.D. Tex. 1997); <u>Miles v. Department of the Army</u>, 881 F. 2d 316, 318 (9th Cir. 1989); <u>Wade v. Secretary of the Army</u>, 796 F. 2d 1369, 1377 (11th Cir. 1989); <u>Edwards v. Department of the Army</u>, 708

17

F.2d 1344, 1345 (8th Cir. 1983); <u>Johnson v. Bergland</u>, 614 F.2d 415, 417-418 (5th Cir.

1980); <u>Jordan v. United States,</u> 522 F.2d 1128, 1132-1133 (9th Cir. 1975).

Good faith cooperation includes participating in the EEO investigation, and

providing an affidavit at the appropriate time to the EEO investigator.  <u>See</u> <u>Rann v. Chao</u>,

346 F.3d 192, 196-197 (D.C. Cir. 2003); <u>Carmona v. O'Neill</u>, No. 02-5088, 2002 WL

1635379 (D.C. Cir. Oct. 1, 2002), <u>cert. denied</u>, 537 U.S. 1193 (2003); <u>Bloodsaw v.</u>

<u>Secretary of the Department of the Treasury</u>, 1991 U.S. App. LEXIS 15920 (9th Cir. 1991)

(refusal to provide an affidavit to EEO investigator is not good faith cooperation and

precludes civil action on same claim due to failure to exhaust).  This rule is predicated on

the concept that exhaustion presupposes cooperation with the procedural requirements

imposed by an administrative entity, here the EEOC.  <u>See</u> 29 C.F.R. § 1614.108(a).

Thus, based on all the foregoing, an administrative complainant is not permitted to

effectively sabotage a federal agency's ability to process, investigate, or decide a claim of

discrimination and then proceed into federal court to file a civil action on the same matter.

As the Eleventh Circuit has explained:

> The purpose of exhaustion is to give the agency the
> information it needs to investigate and resolve the dispute. . .
> Good faith effort by the employee to cooperate with the agency
> and EEOC and to provide all relevant information is all that
> exhaustion requires.

<u>Wade,</u> at 796 F.2d at 1377.

As this Court stated in another suit brought by plaintiff and dismissed for failure to cooperate with the EEO investigation, "[t]he Court will not sanction Plaintiff's suit in this forum after her lack of cooperation at the agency level. . .[f]or the Court to ignore the efforts of the agency and, in essence, reward Plaintiff's non-cooperation, would engender particularly undesirable outcomes." Carmona v. O'Neill, Civil Action No. 01-0115(CKK)(D.D.C. Jan. 21, 2002)(attached hereto as Ex. 8).  Plaintiff in this case has continued her past practice of blithely ignoring the administrative requirements of cooperating with the agency's investigation and then, after such flagrant disregard, filing in this Court.  See Ex. 3, Investigative Summary.  Such contemptuous conduct towards established legal standards should not be sanctioned.  Accordingly, plaintiff's suit should be dismissed in its entirety for failure to cooperate with the administrative investigation.

### C.    Plaintiff Has Failed to Exhaust Her Administrative Remedies on Certain Claims Alleged in Her Complaint.

 It is well-settled that a federal employee is prohibited from filing a civil action in United States District Court under Title VII unless and until she has exhausted administrative remedies. See e.g., Bayer v. U.S. Department of Treasury, 956 F.2d 330, 332 (D.C. Cir. 1992); Zografov v. Veterans' Administration Medical Center, 779 F. 2d 967, 968-70 (4th Cir. 1985); 42 U.S.C. s 2000e-16(c). The administrative remedies exhaustion requirement is mandatory. Brown, 425 U.S. at 832-33; Albritton v. Kantor, 944 F. Supp. 966, 970 (D.D.C. 1996).  It is because conciliation and internal agency resolution, rather than litigation, are the objectives of Title VII that exhaustion of statutory

administration remedies is a prerequisite to judicial relief. See Siegal v. Kreps, 654 F.2d

773,  776-77 (1981); Anderson v. U.S. Postal Service, 25 F.E.P. 938, 939 (D.D.C. 1981).

Further, "each discrete adverse employment action individually triggers Title VII's

procedural" requirement to exhaust.  Coleman-Adebayo v. Leavitt, 326 F.Supp.2d 132,

137 (D.D.C. 2004), citing, National Railroad Passenger Corp. v. Morgan, 536 U.S. 101,

113 (2002).  Discrete discriminatory or retaliatory actions are not actionable if time-barred,

i.e., not exhausted, "even when they relate to acts alleged in timely filed charges." Id.

(emphasis omitted).

The exhaustion requirement "is satisfied if (1) there is a reasonable relationship

between the allegations in the EEO charge and the civil complaint; and (2) the civil claim

can reasonably be expected to grow out of an EEOC investigation of the allegations in the

charge." Mack v. Strauss, 134 F.Supp.2d 103, 109 (D.D.C. 2001).   Further, in order for

allegations to be reasonably related for purposes of exhaustion, the allegations "must have

a factual relationship between them, i.e., they must "describe the same conduct and

implicate the same individuals."  Id., quoting, Cheek v. Western & Southern Life Ins. Co.,

31 F.3d 497, 501 (7th Cir. 1995)(emphasis omitted).

Accordingly, plaintiff's claims are limited to those accepted for investigation (Ex.

2) - allegations related to office space, the three nonselections and disparate impact - and

all other claims described in plaintiff's civil complaint should be dismissed for failure to

exhaust administrative remedies.

**D.    Plaintiff's Claim Related to Her Office Space is Not an Adverse Action.**

To state a discrimination or retaliation claim under Title VII, a plaintiff must demonstrate that she has suffered "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999). Specifically, to meet the "adverse" requirement, the plaintiff must make a "clear showing" of a "material adverse employment action," such as "'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. at 456 (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986) and quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)) (other citations omitted).

The D.C. Circuit, in accord with a number of other Circuits, has held that an objective test is to be used to determine whether a disadvantageous change in the workplace rises to the level of an "adverse employment action." Brown, 199 F. 3d at 457; see also Vasquez v. County of Los Angeles, 307 F.3d 884, 890-891 (9th Cir. 2002); Cullom v. Brown, 209 F. 3d 1035, 1041 (7th Cir. 2000); Sanchez v. Denver Public Schools, 164 F. 3d 527, 532 n.6 (10th Cir. 1998); Doe v. DeKalb Country School District, 145 F. 3d 1441, 1449 (11th Cir. 1998); Smart v. Ball State University, 89 F.3d 437, 441 (7th Cir 1996). However, "[p]urely subjective injuries, such as dissatisfaction with

reassignment, public humiliation or loss of reputation over assigned duties are not adverse actions." Lester, 290 F.Supp.2d at 28. Mere job-related inconveniences also fail as adverse actions. Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993). Instead, the "objectively tangible harm" standard "guards" against both frivolous lawsuits and "judicial micromanagement" of employment decisions by federal agencies. See Russell v. Principi, 257 F.3d 815, 818-819 (D.C. Cir. 2001).

Here, plaintiff's claim related to her office space is not an adverse action and should be dismissed for failure to state a claim. See Weber v. Hurtgen, 297 F.Supp.2d 58, 68 (D.D.C. 2003)(change in office with one less window, "even in Washington," is not adverse employment action).[6]

### E. Defendant Had Legitimate, Nondiscriminatory Reasons for Its Selection Determinations.

In this case, defendant's "production" of evidence regarding the legitimate, non-discriminatory reasons for its three selection determinations are supported by the record and plaintiff cannot demonstrate that those reasons were pretext for discrimination or retaliation. Regarding the position of Deputy Assistant Inspector General for Program Audits under Vacancy Announcement Number OIG-01-009, Ms. Freedman made her

---

[6]Additionally, it should be noted that defendant offered legitimate reasons for not switching plaintiff's office space, specifically, there were several other employees who were in slightly larger/smaller spaces than commensurate with their grade, some with much more significant differences in space than plaintiff's and the individual in the office that plaintiff desired had already unpacked. Ex. 4, Freedman Decl. at 3. Further, plaintiff was offered two opportunities to switch offices but declined. Id. at 3 - 4.

selection determination based on the applications and interviews of the candidates,

legitimate reasons upon which to base such a determination.  See Fischbach v. District of

Columbia Dep't of Corrections, 86 F.3d 1180, 1183-1184 (D.C. Cir. 1996)("Selecting a

pool of qualified candidates based upon their written credentials and then making a final

selection based upon personal interviews is an obviously reasonable method of hiring a

professional employee").

Plaintiff failed to even make the "Best Qualified" list for purposes of consideration

by the selecting official for the Deputy Assistant Inspector General for Program Audits

under Vacancy Announcement Number OIG-01-043.  Ex. 4, Freedman Decl. at 6.

Plaintiff cannot demonstrate that the Executive Resources Board's evaluation of her

application for the position was tainted with a discriminatory or retaliatory animus.   As for

the supervisory auditor position, Ms. Freedman made her selection decision based on the

successful applicant's experience in the enforcement audit area, his audit achievements

and accomplishments, and positive feedback on the applicant.  Ex. 4, Freedman Decl. at 6.

Defendant has presented legitimate reasons for all three selection determinations.

"At the summary judgment stage, failure on the plaintiff's part to demonstrate the

existence of material facts indicating that the proffered reasons are merely pretextual or

that the defendant was in fact animated by a discriminatory motive entitles the defendant

to judgment."   Vasilevsky v. Reno, 31 F.Supp.2d 143, 149 (D.D.C. 1998).  Plaintiff

cannot meet this burden.  Consequently, the Court should dismiss plaintiff's claims of

discrimination and retaliation based on nonselection.

    **F.**    **Plaintiff's Disparate Impact Claim Must Be Dismissed for Failure to State a Claim.**

To establish a prima facie case of discrimination under a disparate impact analysis,

a plaintiff must show that an agency practice or policy, while neutral on its face,

disproportionately impacted members of the protected class through presentation of

statistical evidence that demonstrates a statistical disparity that is linked to the challenged

practice or pattern.  <u>Watson v. Fort Worth Bank and Trust</u>, 487 U.S. 977, 994 (1988).

Plaintiff has not identified an agency "practice or policy" which disparately impacts

Hispanic female employees over the age of 40 with regard to selections for senior

management positions at the grade 15 and SES levels.  Given such, plaintiff has failed to

establish a prima facie case based on disparate impact and her suit must be dismissed.[7]

**V.**    **CONCLUSION**

For the reasons stated herein, defendant respectfully requests that the Court grant

his *Motion to Dismiss or for Summary Judgment* and that, based on such, plaintiff's

complaint be dismissed in its entirety and with prejudice.

---

[7]Defendant reiterates here that plaintiff failed to submit an affidavit during the Agency's investigation into her claims essentially compromising the Agency's efforts in this regard.  Ex. 3, Investigative Report for TD Case No. 01-1155R and EEOC Appeal 01A20044, at 8.  She should not have the opportunity to proceed with this claim before this Court after such uncooperative conduct.

Date: September 30, 2005                    Respectfully Submitted,


                                           /s/ Kenneth L. Wainstein /dch
                                           _____
                                           KENNETH L. WAINSTEIN, D.C. BAR # 451058
                                           United States Attorney


                                           /s/ R. Craig Lawrence /dch
                                           _____
                                           R. CRAIG LAWRENCE, D.C. BAR # 171538
                                           Assistant United States Attorney


                                           /s/ Beverly M. Russell
                                           _____
Of Counsel:                                BEVERLY M. RUSSELL, D.C. Bar #454257
Cynthia Langwiser, Esq.                    Assistant United States Attorney
U.S. Department of the Treasury            U.S. Attorney's Office
                                           555 4th Street, N.W.
                                           Washington, D.C.  20530
                                           Ph:  (202) 307-0492

25

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of *Defendant's Motion to Dismiss or for Summary Judgment*, the supporting memorandum, a Statement of Material Facts Not in Dispute, and Proposed Order was made by the Court's Electronic Case Filing System and by first class, postage prepaid mail, this <u>30th</u> day of September, 2005 to:

Maria V. Carmona
8306 Haven Hill Court
Laurel, Maryland 20723

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney