Subject: Discrimination Complaint of <u>Maria V. Carmona</u>, TD No. <u>01-1155R</u>

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY

In accordance with the provisions of 28 U. S. C. 1746, I, the undersigned, <u>Marla A. Freedman</u>, do hereby make the following unsworn declaration, under penalty of perjury, pertinent to the above stated subject:

1. **Please list the city, state and county where you are currently employed.**

I am currently employed in Washington, DC

2. **Please state your name, place of employment, position title, series and grade. Also, please state your sex and date of birth.**

My name is Marla A. Freedman. I am employed by the Department of the Treasury, Office of Inspector General. My position is Assistant Inspector General for Audit and I am a Senior Executive. My sex is female and my date of birth is October 19, 1962.

3. **Is your national origin Hispanic?**

No.

4. **How long have you been employed with the Office of Inspector General?**

I have been employed by the Department of the Treasury, Office of Inspector General since December 1994.

5. **How long have you been assigned to your current position?**

I have been assigned to my current position since March 2001.

6. **Please state your employment background for two (2) years prior to your current position.**

Prior to my current position I served as the Deputy Assistant Inspector General for Audit with Department of Treasury, Office of Inspector General.

7. **What is your supervisory/working relationship with the Complainant and the duration of this relationship?**

GOVERNMENT EXHIBIT 4

000396

My current supervisory relationship with complainant is third line supervisor. When I was Deputy Assistant Inspector General for Audit, my supervisory relationship with the complainant was second line supervisor. Prior to my selection as Deputy Assistant Inspector General for Audit, I was not in the complainant's supervisory line.

8. **Are you aware of the Complainant's sex, national origin and age? If so, when and how did you become aware?**

I am aware of the complainant's sex and national origin. I was not aware of her age until I saw it in this complaint. I became aware of the complainant's sex the first time I met her (she is a woman) which was shortly after I became employed by the Department of the Treasury, Office of Inspector General. I'm not sure when I became aware of the complainant's national origin. I believe it was as result of a complaint she filed earlier – possibly early calendar year 2000 or late 1999.

(1) Whether the Complainant was discriminated against based on her sex (female), national origin (Hispanic), age (DOB: October 18, 1952 (48)), and retaliation (filed prior EEO complaints) when on September 26, 2000, the Complainant was denied office space and furniture commensurate with her position in accordance with the Office of Inspector General's (OIG) established criteria.

1. **Please explain your role in informing Ms. Carmona that she was denied office space and furniture relating to the office move.**

As Deputy Assistant Inspector General for Program Audit, I was responsible for locating program auditors in the 740 15th Street building who were displaced as a result of closing our other Washington, DC site located at 1255 22nd Street. To accomplish my assignment, I worked with George Tabb, one of my audit managers to help me with the placement of personnel and furniture (from 1255 to 740). It should be noted that since there were already folks in place at the 740 building, we tried to place the folks from the 1255 building into the 740 building with as little disruption as possible.


000397

The determination of office space was based on seniority (time-in-grade/length of service), for the most part. There were some exceptions because we tried to keep (1) disruptions to a minimum and (2) related Directorates together as best we could. We used a drawing of the floor plan and office space to determine placement of personnel. Based on Ms. Carmona's time-in-grade, she was junior, in terms of seniority only to Sam McGeorge. Accordingly, she was assigned the second largest/windowed GS-14 office on the 6th floor, based on the drawing and the general location of her Directorate. I have provided a copy of the floor plan we used to assign space. It should be noted that, based on that drawing, the office assigned to Ms. Carmona appeared to be the largest/windowed office available for her grade in the approximate area that her Directorate was located (I have attached the drawing of the floor plan that we used to assign space).

Shortly, after moving into her new office, she told me that she measured her office in comparison with the one next to it, which was assigned to Alex Best, another ~~GS-14 Audit Manager, claimed that Mr. Best's was some number of inches larger,~~ and asked to be switched. I never made the measurement myself. However, it should be noted that the two offices were quite comparable. Two other things should also be noted: (1) there were several other people who were in slightly larger/smaller space commensurate with their grade (some with much more significant differences in space than Ms. Carmona's), and (2) Alex Best had already unpacked his things. Nevertheless, I discussed Ms. Carmona's request to move with the Assistant Inspector General for Audit at the time, Dennis Schindel, and we decided that we would not move her at this time because it was felt that we were already dealing with enough disruption and we wanted to minimize it as much as possible. I told Ms. Carmona the decision and also told her that as space opened up, she would be given the opportunity to move into other space in the future. I believe that Don Kassel, Ms. Carmona's direct supervisor also discussed the decision with her as well.

Since then, Ms. Carmona has been given two opportunities to move into larger office space and declined both offers. The first time she was offered larger space was in November 2001, and second was in May 2002 (I have attached emails

000398

documenting these offers). Since she declined both offers, I assumed she was happy with her space.

2. **If it was your decision, what documentation or recommendation did you rely on? If it was not your decision, did you have input to the decision?**

The decision was based on the information/documentation discussed in my response to question (1) 1. I did have input into the decision. It was ultimately made in consultation with my supervisor at the time, Dennis Schindel.

3. **If it was your decision or you had input to the decision, did you consider Ms. Carmona's sex, national origin and age when the decision was made to deny her office space and furniture?**

No.

4. **If it was your decision, have there been other employees under your supervision whom you have denied office space and furniture within the last two years (September 1998 through September 26, 2000)?**

There probably have been. It's not unusual for people to ask to move from time to time, however, none that I can recall specifically occurring during the timeframe in question.

It should be noted though that during this timeframe we were negotiating with an employee who required and was given special office accommodations because of a documented medical condition.

N/A – please refer to my answer to question (1) 4.

5. **Are you aware of Ms. Carmona's involvement in the EEO complaint process? If so, when did you become aware and how?**

I became aware of Ms. Carmona's involvement in this complaint on June 17, 2002 (email attached). The first time I became aware of Ms. Carmona's involvement in the EEO complaint process was February 2000 (email attached).

6. **What was your role, if any, in that prior EEO activity?**



The granting/denying of administrative leave so that she could prepare for a pre-hearing conference (see attached email).

7. **Was that prior participation in the EEO process a factor in your decision to deny her office space and furniture?**

No.

8. **Are there any other witnesses who would have relevant information about this claim? Who? What?**

Regarding the office space complaint the following individuals could offer information: Dennis Schindel, Don Kassel, Geroge Taylor, and Bob Taylor.

9. **Provide all documents or evidence in your possession that may be relevant to the claim or suggest documents to be reviewed in support of your position or which refute Ms. Carmona's allegation.**

~~I am providing all relevant documents.~~

(2) Whether the Complainant was discriminated against based on sex (female), national origin (Hispanic), age (DOB: October 18, 1952 (48)), and retaliated against (filed prior EEO complaints) during the merit promotion process (rating, ranking and the evaluation criteria used) when she applied and was not selected:

(a) on or about December 2001, for the position of Deputy Assistant Inspector General ((DAIGA) for Program Audits under Vacancy Announcement Number OIG-01-009;

I believe that vacancy announcement number OIG-01-009 closed around the end of April 2001 or beginning of May 2001. Nevertheless, the complainant never has been discriminated against based on sex, national origin, or age. Furthermore, the complainant has never been retaliated against during the merit promotion process when she applied and was not selected for any position in the organization.

(b) on or about March 2002, for the position of DAIGA for Program Audits under Vacancy Announcement Number OIG-01-043; and

(c) on or about March 18, 2002, for the position of Supervisory Auditor under Vacancy Announcement Number OIG-01-044.



000400

1. What was your role in the selection process for these positions?

I was the "recommending official" for vacancy announcements OIG-01-009 and OIG-01-043. I was the "selecting official" for vacancy announcement OIG-01-044.

2. Did Ms. Carmona make the Best Qualified List (BQ)?

Ms. Carmona made the best-qualified list for vacancy announcements OIG-01-009 and OIG-01-044. Ms. Carmona did not make the best-qualified list for vacancy announcement OIG-01-043.

3. If you were the recommending/selection official, please explain what information was taken into consideration in selecting selectee(s) (e.g., experience, training, case work, complexity of cases, interview results, etc.) Include a comparison of Ms. Carmona's experience, training, reports, projects and/or interview results with those of the selectee(s).

The entire package that each employee submitted during the application process was taken into account. I did not prepare a chart comparing and contrasting Ms. Carmona's specific experience, training, reports, or projects with those of the selectees. I made an assessment based on the collection of information presented by each candidate, including the interview. Based on that assessment, I recommended Barry Savill for selection with regard to vacancy announcement OIG-01-009, and I selected Alex Best for the position of Supervisory Auditor with regard vacancy announcement OIG-01-044. I have included my interview notes from Ms. Carmona's interview for vacancy announcement OIG-01-009 and those of the selectee, Barry Savill. I have also included my interview notes from Ms. Carmona's interview for vacancy announcement OIG-01-044 and those of the selectee, Alex Best.

4. Explain why you selected the employee you did and why you did not select Ms. Carmona.

000401

Note, I was the selecting official for only one of the vacancy announcements – OIG 01-044. In addition to the answer provided to question 3, above, I considered the actual position itself.

Specifically, because the position was for National Director of Enforcement Audits, I considered the relevancy of Mr. Best's experience. In addition, to working in the Enforcement audit area for sometime, he had direct prior work experience with one of our law enforcement bureaus, the Bureaus of Alcohol, Tobacco and Firearms (ATF). I also considered some of Mr. Best's audit achievements and accomplishments. In general Mr. Best has consistently come through on every task to which he's been assigned. More specifically, he led the President's Committee on Integrity and Efficiency (PCIE) government-wide audit of debt collection improvement act results. A job in which more than 10 other Offices of Inspector General participated, and a job that received a significant amount of Congressional interest (he briefed a number of hill staffers on several occasions with the AIGA, at the time, and myself). I should also point out that as difficult as it was, all timeframes were met on that assignment.

Also, I did give consideration to a number of **unsolicited** positive/supportive comments provided to me by peers and subordinates of Mr. Best – encouraging me to strongly consider Mr. Best for the position and letting me know that they would support him in every way if he was selected.

Finally, while Ms. Carmona's work is thorough, it is generally not as timely as the work of others at her grade level.

5. **What criteria did the selectee(s) meet that Ms. Carmona did not?**

Note, I was the selecting official for only one of the vacancy announcements – OIG-01-044. Please refer to my answer provided for number 4 above.

6. **Did you rely on the recommendation of other management officials when you made the selection? If so, which management officials (identify management officials) did you rely on?**



I was the selecting official for only one of the vacancy announcements referred to – OIG 01-044. While I did not "rely" on the recommendation of any other management officials when I made the selection, Don Benson, RIGA (Boston) participated with me in conducting all interviews for vacancy announcement OIG-01-044. He was acting DAIGA at the time. I did consider his comments and observations, but I made the decision myself.

**7. What specific recommendations were made?**

I don't recall any specific recommendations, but overall Don Benson's assessment was consistent with mine.

**8. If there was input, how much weight did you place on it?**

Again, I considered Don Benson's input, but I made the decision. I would estimate the weight given to his input to be between 10 and 20 percent.

**9. Did you have any input to the selection official as to who was selected for the DAIGA for Program Audits or Supervisory Auditor? If so, what and when?**

I did have input to the selecting official for vacancy announcement OIG-01-009. The selecting official for vacancy announcement OIG-01-009 was the Inspector General, Jeffrey Rush. For that position, I recommended Barry Savill for selection, the selecting official concurred with my recommendation. The form of input to the selecting official was a face-to-face meeting with the Inspector General; the Deputy Inspector General was also present at the meeting. The meeting most likely occurred sometime around August 2001 (I don't have record of the exact date).

I was the selecting official for the Supervisory Auditor position, vacancy announcement OIG-01-044. I shared my selection with the Inspector General for the purpose of gaining his concurrence prior to making my decision known to anyone else.

000403

Since Ms. Carmona did not make the best-qualified list for vacancy announcement OIG-01-043, I did not have the opportunity to consider her for recommendation to the selecting official.

**10. If not, did you give any input to any other OIG employee on who was selected? If so, who, what and when?**

Please refer to my response to question 9.

**11. Have you made other selections and/or recommendations within the last two years? Do you know the EEO categories of those selectees as to sex, national origin and/or age?**

I believe I have only made two selections and one recommendation within the last two years. I selected one male, I don't know his age, another male, again, I don't know his age. In addition, I recommended another male for selection; I don't know his age either. I don't know the national origin of any of the selections.

**12. At the time of the selection, were you aware of Ms. Carmona's sex, national origin and age?**

I am aware of the complainant's sex and national origin. I was not aware of her age until I saw it in this complaint. I became aware of the complainant's sex the first time I met her which was shortly after I became employed by the Department of the Treasury, Office of Inspector General. I'm not sure when I became aware of the complainant's national origin. I believe it was as result of a complaint she filed earlier – possibly early calendar year 2000 or late 1999.

**13. Provide the names of any witnesses you suggest be interviewed and indicate the matter on which each individual can be expected to testify.**

Jeffrey Rush, selection official for vacancy announcement OIG-01-009.
Don Benson, interview partner for vacancy announcement OIG-01-044.

**14. Provide any documents in your possession that may be relevant to the claim or suggest documents to be reviewed in support of your position.**



I have already indicated in response to questions above that I will provide such documents.

**15. Was Ms. Carmona's sex, national origin and age a factor in management's decision?**

No.

**16. Did you retaliate against Ms. Carmona because of her prior participation in the EEO process?**

No.

(3) Whether the Agency's hiring and promotion practice have adversely affected/impacted Hispanic employees, and females, over the age of 40 in regard to selections for senior management positions at the grade 15 level and SES positions.

**1. Ms. Carmona has alleged that management has manipulated the personnel system in violation of merit system principles. Specifically address Ms. Carmona's allegations about these violations.**

I have been a senior manager in the Office of Inspector General at the GS-15 level, since 1994, and at the SES level since 1998. Based upon my knowledge of this organization, management has unequivocally NOT manipulated the personnel system in violation of the merit system principles.

---

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___7/19/2002___ at ___Washington, DC___
         (Date)                    (City & State)

_____
                SIGNATURE

000405