BEFORE THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Maria V. Carmona, ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action No. 05-1194(JGP) |
| v. ) | |
| ) | |
| John W. Snow, ) | |
| Secretary, Department ) | |
| of the Treasury, ) | |
| ) | |
| Defendant ) | |

DECLARATION OF MARLA A. FREEDMAN

I, Marla A. Freedman, Assistant Inspector General for Audit, Office of Inspector General, Department of the Treasury, in my official capacity, declare:

1. I was the recommending official for the position of Deputy Assistant Inspector General for Program Audit (DAIGA) advertised under Vacancy Announcement OIG-01-009. Inspector General Jeffrey Rush was the selecting official for the position – it is a Senior Executive Service (SES) position.

2. As the recommending official, the best qualified candidates were referred to me by the Human Resources Division (HR) for interview and recommendation. Prior to receiving the best qualified list from HR, I prepared a standard set of questions that I

1

planned to ask each candidate. Upon receiving the best qualified list from HR, interviews with each candidate were scheduled.

3. In making my recommendation, I carefully considered each candidate's response to the standard set of questions that I had asked. I made every attempt to design the questions in a manner that would elicit relevant experiences that would benefit the organization, indicate the candidate would be successful in the position, and provide thoughtful views on how to improve things in terms of production and quality of product.

4. I recommended Barry Savill for DAIGA for a number of reasons. As National Director for Enforcement Audits (GS-511-15), Mr. Savill was responsible for the audit work of Treasury's largest and/or most "visible" bureaus (Customs, Bureau of Alcohol, Firearms and Tobacco (ATF), Secret Service, Federal Law Enforcement Training Center (FLETC), and Financial Crimes Enforcement Network (FinCEN)) for which we had audit responsibility – we do not have audit responsibility for IRS, Treasury's largest bureau. Furthermore, as National Director for Enforcement Audits, Mr. Savill was already overseeing not only his Directorate in Headquarters, but the OIG's Houston Office/Miami Sub-Office, the Chicago Office, and the Boston Office/Marlton Sub-Office. Mr. Savill's experiences prior to serving as National Director for Enforcement Audits included serving as, among other things, Special Assistant to the Inspector General, Regional Inspector General for Audit (Boston), and testifying before Congress. These very relevant experiences combined, supported my recommendation with regard to indicators of benefit to the organization and to success in the position.

5. Ms. Carmona's management and leadership experiences were rather modest in comparison, both in terms of span and control. Ms. Carmona was an Audit Manager

(GS-511-14). While she did, on a number of occasions, serve as an Acting Director, her experience in so doing was limited in location (headquarters), in duration (time), and in span (number of people supervised). In comparison, Mr. Savill served as Regional Inspector General for Audit (RIGA) in our Boston office and as a Director in headquarters during his tenure with the OIG. I determined his field and headquarter experience combined to be a valuable attribute in a DAIGA because (1) the position was first line supervisor to a number of Directors in headquarters as well as the four RIGAs in the field, and (2) I possessed limited field experience. I felt that his experience in this area would be a good compliment to mine, more likely to provide practical perspective and effective communication with the field. Furthermore, as National Director for Enforcement Audits, Mr. Savill was not only directly supervising his staff in headquarters; he was coordinating (indirectly supervising/leading) three OIG offices (Boston, Houston, and Chicago) and two OIG sub-offices (Marlton and Miami) in the field. His proven accomplishments as National Director for Enforcement Audits gave me confidence that he would be successful as my DAIGA.

6. With regard to Mr. Savill's views on his role as a DAIGA, while he acknowledged our strong management team in the field, he appropriately pointed out that we, as an organization, lacked a reliable infrastructure. Among other things, he committed to me that if he were selected DAIGA, he would have a Management Information System in place in 12 months. He suggested that we needed to create a group to keep things "in-check" – a quality control group. He also pointed out that we needed to do a better job of project planning and priority setting. I considered these observations and suggestions to be insightful and on target. Accordingly, based on Mr.

3

Savill's response, I could see how his concrete ideas of how to improve things in terms of production and quality of product could work if he were DAIGA.

7. Ms. Carmona's perspective was much less precise in that with regard to her view on the role of a DAIGA, she cited the ability to lead an organization, the ability to form working teams, external liaison/coalition building, and operational issues (budget/allocation/awards). She said the bottom-line was to deliver the product and build our reputation. While these things are important and necessary, she did not provide specific examples of what she would do or what really needed to be done. Also, since she was already a member of the organization, I expected her to focus on what she would do if she were selected for this DAIGA position; not a nebulous DAIGA position. At the time she was interviewed we already had successful working teams, our ability to liaison externally was effective, and while "operational issues" needed to be addressed, there was no mention of how to address them. Based on her response, I did not know how she would improve things in terms of production and quality of product if she were DAIGA.

8. Taking all these factors into consideration, I recommended Barry Savill for selection. Inspector General Rush accepted my recommendation and selected Barry Savill for the position.

I declare under penalty of perjury that the foregoing is true and correct. Executed pursuant to 28 U.S.C. 1746 this 14th day of October, 2005

Marla A. Freedman
Assistant Inspector General for Audit
Office of Inspector General
Department of the Treasury

4