UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Maria V. Carmona
8306 Haven Hill Court
Laurel, Maryland 20723
301-490-4328

V.

CIVIL ACTION NO. 05cv1194 (JGP)

John W. Snow
Secretary of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, DC 20220

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Plaintiff respectfully submits this opposition to Defendant's *Motion to Dismiss or for Summary Judgment* [#14]. Plaintiff reminds the Court that she is proceeding *pro se*.

Plaintiff's *Opposition to Summary Judgment* comprises this opening statement; responses to Defendant's *Memorandum of Points and Authorities in Support of Defendant's Motion To Dismiss and for Summary Judgment* and to Defendant's *Statement of Material Facts Not In Dispute*; Plaintiff's *Memorandum of Points and Authorities* and Plaintiff's *Statement of Genuine Issues of Material Fact That Are in Dispute*; and Plaintiff Exhibits 1-11.[1]

**RECEIVED**

APR 1 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

---

[1] Plaintiff also wishes to note that, despite presenting indisputable evidence of pretext and perjury, Plaintiff has not been able to obtain relevant and material evidence under control of Defendant through discovery and that a trial has not been scheduled/commenced in this case. Plaintiff notes that Defendant was nonresponsive to her discovery requests [Ref. 04cv0589 (JGP), #62, Exhibit B].

Plaintiff asserts that Defendant has not made the requisite showing to entitle him to summary judgment; that Defendant used pretext for his proffered reasoning for his adverse actions taken against Plaintiff; that Defendant has indisputably committed perjury in his representations before this Court; and that there are genuine issues of material fact that remain in dispute such that they can only be resolved by a jury. Plaintiff respectfully requests to be allowed the courtesy to file a response if there is any new material submitted by Defendant in his reply brief that the Court plans to consider in making a determination on whether to grant Defendant summary judgment.

Plaintiff asserts that Defendant knowingly came to Court believing that he could get five of Plaintiff's formal administrative EEO complaints dismissed while misrepresenting to the Court (1) all five of the EEO complaints Plaintiff had filed; (2) all of the claims, issues, and matters that Plaintiff had raised in the five EEO complaints; and (3) all of the evidence Plaintiff had provided in the five EEO complaints that are the subjects in the instant civil action, while violating the regulations governing the administrative EEO process and while making false and misleading statements and committing perjury before this Court.

Plaintiff's filing on April 17, 2006, *Plaintiff Statement Regarding Defendant's False Statements and Perjury Before the Court* (a copy is included with this filing as P.Ex. 1)[2] provides indisputable evidence of pretext and perjury by Defendant to such a degree and extent that the Court should find Defendant simply has no credibility for defending his

---

[2] P.Ex. refers to Plaintiff Exhibit; D.Ex. refers to Defendant Exhibit. The *Plaintiff Statement* at P.Ex. 1 contains 17 sub-exhibits, labeled A through Q.

summary judgment motion or his long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment as claimed by Plaintiff.

## Background

In her complaint, Plaintiff claimed that defendant John W. Snow, Secretary of the Treasury, his staff, and his predecessors and their staffs, have committed, and are being allowed to commit, along with other officials of the United States government, a long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment against her in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 *et seq.*, based on her national origin (Hispanic); with special consideration given due to her being Cuban-American, having been born in Havana, Cuba; sex (female); age (D.O.B. October 8, 1952); and in reprisal for engaging in prior statutorily protected activity. [1-9]

EEOC 29 C.F.R. 1614 provides, in part, that:

(a) It is the policy of the Government of the United States to provide equal opportunity in employment for all persons, to prohibit discrimination in employment because of race, color, religion, sex, national origin, age or handicap and to promote the full realization of equal employment opportunity through a continuing affirmative program in each agency.

(b) No person shall be subject to retaliation for opposing any practice made unlawful by title VII of the Civil Rights Act (title VII) (42 USC 2000e *et seq.*), the Age Discrimination in Employment Act (ADEA) (29 USC 621 *et seq.*), ...or for participating in any stage of administrative or judicial proceedings under those statutes. [10-20]

Plaintiff also claimed that officials of the United States government have exhibited a long-term pattern and practice of conspiring to oppress, threaten, and intimidate her out of her civil right to equal employment opportunity in violation of 18 U.S.C. § 241 (2002) Conspiracy Against Rights, which states:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, or Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same.... They shall be fined under this title or imprisoned not more than ten years, or both.... [ 21-29]

Plaintiff respectfully refers the Court to the Supreme Court of the United States holding in No. 00-1853, *Akos Swierkiewicz, Petitioner v. Sorema N.A.*, [February 26, 2002] in which Justice Thomas delivered the opinion of the Court, which states in pertinent part:

> This case presents the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). We hold that an employment discrimination complaint need not include such facts and instead must contain only "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Also, Justice Thomas went on to say in conclusion that:

> For the foregoing reasons, we hold that an employment discrimination plaintiff need not plead a prima facie case of discrimination and that petitioner's complaint is sufficient to survive respondent's motion to dismiss.

Plaintiff asserts that she met and in fact exceeded the above standard.

Plaintiff wishes to clarify several material facts in the case. Plaintiff filed the five formal administrative Equal Employment Opportunity (EEO) complaints that are the subjects of the instant civil action on December 18, 2000; December 12, 2001; May 7, 2002; July 18,

2002; and August 21, 2002 (P.Ex. 2-6). These five formal administrative EEO complaints chronologically constitute the twelfth, thirteenth, fourteenth, fifteenth, and sixteenth of the nineteen formal EEO complaints that Plaintiff has been forced to file to date against Defendant and all since December 1995.

Defendant, in addition to his perjury as documented by Plaintiff in her April 17, 2006, filing (P.Ex. 1), continues his pattern and practice of making false declarations before this Court when he misrepresents the nature of Plaintiff's EEO filings throughout his instant *Motion* by making reference to only one formal administrative EEO complaint when in fact, as shown above, there are five formal administrative EEO complaints filed by Plaintiff that are the subjects of this civil case. In addition, Defendant has submitted an incomplete copy of only one of Plaintiff's formal administrative EEO complaints [#14, D.Ex. 1], presenting it as if the complaint is provided in its entirety, when in fact very significant material portions are omitted.[3] Plaintiff asserts that this is simply another example in a long-term pattern and practice by Defendant of making intentional misrepresentations before the Court and other officials of the United States government.

## EEOC MD 110, CHAPTER 5, AGENCY PROCESSING OF FORMAL COMPLAINTS

### I. AGENCY SHALL ACKNOWLEDGE FORMAL COMPLAINT

Immediately upon receipt of a formal complaint of discrimination, the agency shall acknowledge receipt of the complaint in writing.

---

[3] Defendant clearly omitted pages 55-60 of Plaintiff's statement and all of the exhibits. Plaintiff notes that this one complaint alone comprised 310 pages.

## II. THE AGENCY SHALL ALSO PROVIDE OTHER INFORMATION AND NOTICE OF RIGHTS

### A. Agency Shall Inform the Complainant of the Agency's Obligations

#### 1. To Investigate in a Timely Manner

The agency is required to investigate the complaint in a timely manner. The investigation must be appropriate, impartial, and completed within **180 days** of filing the complaint....

## EEOC MD 110, CHAPTER 6, DEVELOPMENT OF IMPARTIAL AND APPROPRIATE FACTUAL RECORDS

### I. INTRODUCTION

Section 1614.108(b), of Title 29 C.F.R., requires that "the agency shall develop an impartial and appropriate factual record upon which to make findings on the claims raised by the written complaint." An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred.

It is indisputably clear that Defendant failed to comply with the above-referenced regulations.[4]

## EEOC MD 110, CHAPTER 7, HEARINGS

### I. INTRODUCTION (4th paragraph)

In an agency's written acknowledgment of receipt of a complaint or an amendment to a complaint, the agency shall advise the complainant of the EEOC office and address where a hearing request is to be sent as well as the agency office to which the copy of the request should be sent. In the absence of the required notice from the agency, the complainant may request a hearing at any time after 180 days have elapsed from the filing of the complaint by submitting his/her written hearing request

---

[4] In addition to Defendant being required to investigate a complaint within 180 days of its filing, Plaintiff notes that it is also indisputably clear from EEOC Administrative Judge Goode's Order in related case 04cv0589 (JGP), P.Ex. 9, that a plaintiff is not obligated to participate in an investigation after 180 days from the filing of the complaint. Plaintiff also wishes to note that at that time Judge Goode requested no further information from Plaintiff, meaning that Plaintiff had provided in her complaint sufficient information. Plaintiff also notes that Judge Goode did find it necessary to request information from Defendant in that case that Plaintiff believes was never provided by Defendant.

directly to the appropriate EEOC district or field office indicated in the agency's acknowledgment letter. § 1614.108(g).

Evidence indisputably shows that Plaintiff properly and timely filed a request for hearing before an EEOC administrative judge on TD 01-1155 on July 30, 2001, which was acknowledged on July 31, 2001, by EEOC Supervisory Administrative Judge Shih[5] and which was assigned EEOC No. 100-A2-7098X, as indisputably shown in P.Ex. 10. And it is indisputably clear that Judge Shih ordered Defendant to produce the complaint file within 30 days. Plaintiff submits that Defendant failed to comply with Judge Shih's Order.

**EEOC MD 110, CHAPTER 7, HEARINGS**

### III. THE ROLE OF THE ADMINISTRATIVE JUDGE

> Once an Administrative Judge is appointed, the Administrative Judge has full responsibility for the adjudication of the complaint. § 1614.109(a). The agency cannot dismiss a case that has been referred to the EEOC for a hearing. § 1614.107(a)

#### A. Administrative Judge's Review

> An Administrative Judge shall determine whether additional documentation is necessary and may request of the appropriate party the production of any additional documentation.

It is indisputably clear that on July 31, 2001, EEOC Supervisory Administrative Judge Shih had accepted full responsibility for adjudication of the complaint (P.Ex. 10); and that, as such, it was Judge Shih's sole responsibility in accordance with the regulations to determine

---

[5] EEOC administrative judge Shih is the same judge who found that Hispanic is not a national origin in Plaintiff's initial formal administrative EEO complaint, which was filed on December 14, 1995, ref. #1, P.Ex. B, and evidence shows in that case that Judge Shih granted a clearly improper summary judgment to Defendant. Plaintiff wishes to note that the case referred to here is not a subject in the instant civil action or in any of the other three civil actions Plaintiff has been forced to file to date against the Defendant, but that it directly goes to and evidences Plaintiff's conspiracy claims by officials of the United States Government to deny Plaintiff her civil right to equal employment opportunity.

whether additional documentation was needed from either party. Plaintiff notes that Judge

Shih did not request any additional information from Plaintiff.

Plaintiff's filing of April 17, 2006, *Plaintiff Statement Regarding Defendant's False*

*Statements and Perjury Before the Court* (P.Ex. 1) provides indisputable evidence of perjury

by Defendant to the degree that Defendant simply has no standing for defending his instant

motion or for his long-term pattern of adverse actions taken against Plaintiff. Defendant's

perjury provides indisputable evidence in support of Plaintiff's overarching claim of a

long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing

work environment.

In support of her opposition to Defendant's *Motion*, Plaintiff cites Supreme Court of the

United States No. 99-536 *Roger Reeves, Petitioner v. Sanderson Plumbing Products, Inc.,*

Pgs. 11-12:

> In reaching this conclusion, however, we reasoned that it is *permissible* for the
> trier of fact to infer the ultimate fact of discrimination from the falsity of the
> employer's explanation. Specifically, we stated:
>
>> "The factfinder's disbelief of the reasons put forward by the defendant
>> (particularly if disbelief is accompanied by a suspicion of mendacity) may,
>> together with the elements of the prima facie case, suffice to show
>> intentional discrimination. Thus, rejection of the defendant's proffered
>> reasons will permit the trier of fact to infer the ultimate fact of intentional
>> discrimination." Id., at 511.
>
>> Proof that the defendant's explanation is unworthy of credence is simply
>> one form of circumstantial evidence that is probative of intentional
>> discrimination, and it may be quite persuasive. See *id.,* at 517 ("[P]roving
>> the employer's reason false becomes part of (and often considerably assists)
>> the greater enterprise of proving that the real reason was intentional
>> discrimination"). In appropriate circumstances, the trier of fact can
>> reasonably infer from the falsity of the explanation that the employer is

dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright* v. *West,* 505 U. S. 277, 296 (1992); see also *Wilson* v. *United States,* 162 U. S. 613, 620-621 (1896); 2 J. Wigmore, Evidence §278(2), p. 133 (J. Chadbourn rev. ed. 1979). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Cf. *Furnco Constr. Corp.* v. *Waters,* 438 U. S. 567, 577 (1978) ("[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with *some* reason, based his decision on an impermissible consideration"). Thus, a plaintiffs prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

---

Defendant's Motion should be dismissed in its entirety and appropriate sanctions should be placed on Defendant for his perjury before this Court and for his lack of credibility in any matters regarding Plaintiff's administrative and civil cases. Plaintiff asserts that Defendant knowingly and purposefully making false representations and false statements before the Court is sufficient reason to deny Defendant summary judgment.

Plaintiff has claimed a long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment due to Plaintiff's Hispanic national origin, sex, age, and in retaliation for Plaintiff engaging in protected activity. It is Plaintiff's understanding that Defendant has denied this claim in its entirety, as is evidenced in his filing of a general denial answer to Plaintiff's complaint and his raising of affirmative defenses in hopes to simply be able to avoid admitting to material facts and avoid liability.

Plaintiff asserts that, based on a fair and objective review of Plaintiff's entire opposition, it is clear that genuine issues of material fact are in dispute; and based on the overwhelming preponderance of misleading, false, and perjurious statements Defendant has knowingly made before the Court, Defendant is not entitled to summary judgment.

A Proposed Order consistent with Plaintiff's position and a Certificate of Service are also attached hereto.

Respectfully Submitted,

Maria V. Carmona, *pro se*
8306 Haven Hill Court
Laurel, Maryland 20723
(301) 490-4328

10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Maria V. Carmona
8306 Haven Hill Court
Laurel, Maryland 20723
301-490-4328

     V.                                                    CIVIL ACTION NO. 05cv1194 (JGP)

John W. Snow
Secretary of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, DC 20220

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT**

In responding to Defendant's *Memorandum of Points and Authorities* in support of Plaintiff's

instant opposition to Defendant's *Motion to Dismiss or for Summary Judgment* [#14], Plaintiff

looks to regulations contained at 29 C.F.R. 1614; policies, procedures, and guidance contained in

the U.S. Equal Employment Opportunity Commission Management Directive MD-110 (EEOC

MD-110); previous EEOC decisions; holdings by the Supreme Court of the United States;[1] and

the perjury committed by Defendant in this Court (P.Ex. 1).

---

[1] Plaintiff refers the Court to Supreme Court of the United States holdings in *Roger Reeves, Petitioner v. Sanderson Plumbing Products, Inc.,* No. 99-536, and in *Akos Swierkiewicz, Petitioner v. Sorema N.A.,* No. 00-1853. Both of these cases provide support for the Court finding in favor of Plaintiff's overarching claim that a long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment has been committed and that, therefore, Plaintiff is entitled to damages. References to Supreme Court decisions also include all of the cases that are cited therein.

First, however, Plaintiff wishes to clarify several material facts in the case. Plaintiff filed the five formal administrative Equal Employment Opportunity (EEO) complaints that are the subjects of the instant civil action on December 18, 2000; December 12, 2001; May 7, 2002; July 18, 2002; and August 21, 2002 (P.Ex. 2-6). These five formal administrative EEO complaints chronologically constitute the twelfth, thirteenth, fourteenth, fifteenth, and sixteenth of the nineteen formal EEO complaints that Plaintiff has been forced to file to date against Defendant and all since December 1995.

Defendant, in addition to his perjury as documented by Plaintiff in her April 17, 2006, filing (P.Ex. 1), continues his pattern and practice of making false declarations before this Court when he misrepresents the nature of Plaintiff's EEO filings throughout his instant *Motion*, including his *Memorandum of Points and Authorities*, by making reference to only one formal administrative EEO complaint when in fact, as shown above, there are five formal administrative EEO complaints filed by Plaintiff that are the subjects of this civil case. In addition, Defendant has submitted an incomplete copy of only one of Plaintiff's formal administrative EEO complaints [#14, D.Ex. 1], presenting it as if the complaint is provided in its entirety, when in fact very significant material portions are omitted.[2] Plaintiff asserts that this is simply another example in a long-term pattern and practice by Defendant of making intentional misrepresentations before the Court and other officials of the United States government.

---

[2] Defendant clearly omitted pages 55-60 of Plaintiff's statement and all of the exhibits. Plaintiff notes that this one complaint alone comprised 310 pages.

Below is a list of the items that Plaintiff included in the complaint as filed with Defendant

(P.Ex. 2), annotated as to which portions Defendant has filed with the Court. Plaintiff believes

this was done with the willful intent to deceive the Court, and in essence constitutes a false

statement before the Court. By this action, Defendant is avoiding submission to the Court of the

detailed evidence of Plaintiff's claims provided to Defendant by Plaintiff when she filed

her twelfth formal administrative EEO complaint.

- Cover Letter to Lawrence H. Summers, Secretary of the Treasury, from Maria V. Carmona, Complainant (2 pages) – **Defendant Did Not Provide**

- Three EEO forms (4 pages) – **Defendant Provided**

- A document consisting of a list of current EEO claims (21 individual claims listed), a brief background, and a discussion of each of the current EEO claims. (60 pages) – **Defendant Provided Only the First 54 Pages**

- Attachments A through W (244 pages) – **Defendant Did Not Provide**

The portions that Defendant omitted are significant because they address additional

indications of discrimination, retaliation, and a hostile work environment, and because they

provide reference to Plaintiff's exhibits and include documentary evidence in the form of

23 exhibits.

The pages of Plaintiff's administrative EEO complaint omitted by Defendant in his filing

provide indisputable evidence that Plaintiff provided comprehensive statements and evidence in

support of her raised concerns, such that additional information would not have been necessary

for Defendant to properly and timely investigate Plaintiff's claims in compliance with the

3

regulations, which, evidence shows, Defendant clearly did not do in direct violation of the regulations as discussed in the following.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES (MPA) BY SECTION

### I. STATEMENT OF FACTS

### A. Plaintiff's Complaints

### 1. Administrative Complaint

Defendant states that *on or around December 18, 2000, plaintiff filed an administrative complaint alleging discrimination and retaliation.*[3]  However, it is clear from #14, D.Ex. 1, Individual Complaint of Employment Discrimination, Dec. 18, 2000, that Defendant admits to the date of filing as December 18, 2000.

In addition, Plaintiff made two requests, one on January 18, 2001,[4] and another on June 13, 2001, requesting the status of the formal administrative EEO complaint she filed on December 18, 2000, as P.Ex. 7 indisputably shows.  These requests are evidentiary of Plaintiff making every effort to properly and timely prosecute her case.

P.Ex. 8 indisputably shows that on June 27, 2001, more than 180 days from the filing of the formal administrative EEO complaint, Defendant finally acknowledged the December 18, 2000,

---

[3] This is not an accurate statement of Plaintiff's allegations.  Plaintiff refers the Court to P.Ex. 2-6, which contain the complaints as filed.
[4] Plaintiff wishes to note that this status request refers to the complaint as filed in that it comprised 310 pages. Plaintiff notes that the overwhelming majority of the 310 pages was indisputable evidence Plaintiff submitted in support of the allegations Plaintiff had made in just this one complaint.

filing of Plaintiff's twelfth formal administrative EEO complaint, assigning it TD Case Number: 01-1155.

It is indisputably clear that Defendant did not even acknowledge the proper and timely filing of Plaintiff's twelfth formal administrative EEO complaint until more than 180 days had passed from the date of filing, in clear violation of the regulations, which required immediate notification as discussed below.

It is also clear from the record that Defendant has never acknowledged the filing of the four other formal administrative EEO complaints (P.Ex. 3-6) that are the subjects of the instant civil action, also in clear violation of the regulations.

There is thus indisputable evidence that Defendant not only repeatedly violated the regulations, but also that he purposefully kept Plaintiff from the proper and timely administrative processing of her complaints.

## EEOC MD 110, CHAPTER 5, AGENCY PROCESSING OF FORMAL COMPLAINTS

### I. <u>AGENCY SHALL ACKNOWLEDGE FORMAL COMPLAINT</u>

Immediately upon receipt of a formal complaint of discrimination, the agency shall acknowledge receipt of the complaint in writing.

## II. THE AGENCY SHALL ALSO PROVIDE OTHER INFORMATION AND NOTICE OF RIGHTS

### A. Agency Shall Inform the Complainant of the Agency's Obligations

1. To Investigate in a Timely Manner

> The agency is required to investigate the complaint in a timely manner. The investigation must be appropriate, impartial, and completed within **180 days** of filing the complaint....

## EEOC MD 110, CHAPTER 6, DEVELOPMENT OF IMPARTIAL AND APPROPRIATE FACTUAL RECORDS

### I. INTRODUCTION

Section 1614.108(b), of Title 29 C.F.R., requires that "the agency shall develop an impartial and appropriate factual record upon which to make findings on the claims raised by the written complaint." An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred.

It is indisputably clear that Defendant failed to comply with the above-referenced

regulations.[5]

---

[5] In addition to Defendant being required to investigate a complaint within 180 days of its filing, Plaintiff notes that it is also indisputably clear from EEOC Administrative Judge Goode's Order in related case 04cv0589 (JGP), P.Ex. 9, that a plaintiff is not obligated to participate in an investigation after 180 days from the filing of the complaint. Plaintiff also wishes to note that at that time Judge Goode requested no further information from Plaintiff, meaning that Plaintiff had provided in her complaint sufficient information. Plaintiff also notes that Judge Goode did find it necessary to request information from Defendant in that case that Plaintiff believes was never provided by Defendant.

6

**EEOC MD 110, CHAPTER 7, HEARINGS**

### I. INTRODUCTION (4th paragraph)

In an agency's written acknowledgment of receipt of a complaint or an amendment to a complaint,[6] the agency shall advise the complainant of the EEOC office and address where a hearing request is to be sent as well as the agency office to which the copy of the request should be sent. In the absence of the required notice from the agency, the complainant may request a hearing at any time after 180 days have elapsed from the filing of the complaint by submitting his/her written hearing request directly to the appropriate EEOC district or field office indicated in the agency's acknowledgment letter. § 1614.108(g).

Evidence indisputably shows that Plaintiff properly and timely filed a request for hearing before an EEOC administrative judge on TD 01-1155 on July 30, 2001, which was acknowledged on July 31, 2001, by EEOC Supervisory Administrative Judge Shih[7] and which was assigned EEOC No. 100-A2-7098X, as indisputably shown in P.Ex. 10. And it is indisputably clear that Judge Shih ordered Defendant to produce the complaint file within 30 days. Plaintiff submits that Defendant failed to comply with Judge Shih's Order.

**EEOC MD 110, CHAPTER 7, HEARINGS**

### III. THE ROLE OF THE ADMINISTRATIVE JUDGE

Once an Administrative Judge is appointed, the Administrative Judge has full responsibility for the adjudication of the complaint. § 1614.109(a).

---

[6] Plaintiff did not, and has not, amended any of her formal administrative EEO complaint(s).

[7] EEOC administrative judge Shih is the same judge who found that Hispanic is not a national origin in Plaintiff's initial formal administrative EEO complaint, which was filed on December 14, 1995, ref. #1, P.Ex. B, and evidence shows in that case that Judge Shih granted a clearly improper summary judgment to Defendant. Plaintiff wishes to note that the case referred to here is not a subject in the instant civil action or in any of the other three civil actions Plaintiff has been forced to file to date against the Defendant, but that it directly goes to and evidences Plaintiff's conspiracy claims by officials of the United States Government to deny Plaintiff her civil right to equal employment opportunity.

7

> The agency cannot dismiss a case that has been referred to the EEOC for a hearing. § 1614.107(a)

A. **Administrative Judge's Review**

> An Administrative Judge shall determine whether additional documentation is necessary and may request of the appropriate party the production of any additional documentation.

Defendant states under *Administrative Complaint* in his *Motion* [#14, MPA, Pgs. 2, 3] that *By letter dated May 17, 2002, Ms. Deborah W. Jenkins, Acting Director, Treasury Complaint Center, informed plaintiff that the following claims were accepted for investigation:...* (The rest of the text is omitted due to it not being material.)

As discussed above, Plaintiff asserts that by regulation Defendant clearly had no right to investigate the complaint. It is indisputably clear that, in accordance with the regulations, Defendant was required to investigate Plaintiff's complaint within 180 days from of its filing, but chose not to do so.

It is indisputably clear that on July 31, 2001, EEOC Supervisory Administrative Judge Shih had accepted full responsibility for adjudication of the complaint (P.Ex. 10); and that, as such, it was Judge Shih's sole responsibility in accordance with the regulations to determine whether additional documentation was needed from either party. Plaintiff notes that Judge Shih did not request any additional information from Plaintiff.

Plaintiff wishes to make the following brief observations regarding certain statements made by Defendant in this section which evidence further indications of a hostile work environment by Defendant during the administrative processing of Plaintiff's administrative EEO cases. It is

noted that Defendant did not provide the enclosures to Jenkin's letter [#14, D.Ex. 2], i.e., the

(1) Clarification Letter, and (2) Referral Letter to the Department of the Treasury. Also, the

three claims listed by Defendant do not correctly and completely represent the claims made by

Plaintiff in the five formal administrative EEO complaints filed by Plaintiff that are the subjects

of this civil case. As stated previously, Section 1614.108(b), of Title 29 C.F.R., requires that *the*

*agency shall develop an impartial and appropriate factual record upon which to make findings*

*on the claims raised by the written complaint.* The regulations clearly do not state that the

defendant can pick and choose or otherwise misrepresent the claims raised by the written

complaint, as Defendant clearly attempted to do. See P.Ex. 2-6 for copies of the five

complaints.[8]

Plaintiff is unaware of any additional information from that contained in her five formal

administrative EEO complaints that was solely under Plaintiff's control that would have been

required for Defendant to conduct a proper and timely investigation in accordance with the

regulations.

### 2. Civil Complaint

In general, Plaintiff's filing of April 17, 2006, *Plaintiff Statement Regarding Defendant's*

*False Statements and Perjury Before the Court* (P.Ex. 1), addresses this section in that it

---

[8] Defendant has exhibited a long-term pattern and practice of restating, misstating, and/or providing an incomplete statement of the claims, issues, and matters raised by Plaintiff in her formal administrative EEO complaints. As stated previously, EEOC MD 110, CHAPTER 6, DEVELOPMENT OF IMPARTIAL AND APPROPRIATE FACTUAL RECORDS, I. INTRODUCTION, states that *Section 1614.108(b), of Title 29 C.F.R., requires that "the agency shall develop an impartial and appropriate factual record upon which to make findings on the claims raised by the written complaint."* (emphasis added)

9

indisputable evidence of perjury by Defendant to the degree that Defendant simply has

no standing for defending his instant motion or for his long-term pattern of adverse actions taken

against Plaintiff. Defendant's perjury provides indisputable evidence in support of Plaintiff's

overarching claim of a long-term pattern of discrimination, retaliation, disparate treatment, and a

hostile/harassing work environment.

Defendant mischaracterizes Plaintiff's claims, issues, and matters in this section, including in

a 19-item list following *Plaintiff's allegations in her civil suit include:….* Plaintiff's civil

complaint and the subject five formal administrative EEO complaints (P.Ex. 2-6) provide the

best evidence of Plaintiff's claims, issues, and matters.

## B. Facts Related to Investigated Claims[9]

## 1. Dissatisfaction with Office Space[10]

Plaintiff's filing of April 17, 2006, *Plaintiff Statement Regarding Defendant's False

Statements and Perjury Before the Court* (P.Ex. 1), addresses this section in that it provides

indisputable evidence of perjury by Defendant with reference to the statements in this section,

shown in *italics*, as follows.

---

[9] Plaintiff asserts, as stated previously in Footnote 8 regarding Defendant's pattern of behavior in this regard, that Defendant does not have the right to simply pick and choose which claims raised by Plaintiff are the ones to be investigated.

[10] Evidence of hostile work environment.

- *...determinations related to office space were based primarily on seniority....There were two exceptions - (1) keeping disruptions to a minimum and (2) keeping related Directorates together if possible.*

    See P.Ex. 1, Lines 126-146.

- *Shortly after moving into her new office, plaintiff informed Ms. Freedman that her office in comparison with the one next to it, which was assigned to Alex Best... was some inches smaller and requested to be switched.   ...Mr. Best had already unpacked.*

    See P.Ex. 1, Lines 114-150.

- *Ms. Freedman thus decided that plaintiff would not be moved because the office was dealing with enough disruption; however, plaintiff would be given the opportunity to move into other space in the future...Consistent with this determination, plaintiff was offered two opportunities to move into larger space - the first in November 2001 and the second in May 2002 - but declined both offers.*

    See P.Ex. 1, Lines 151-172.


In addition to Plaintiff's April 17, 2006, statement regarding perjury in Freedman's

*Declaration* (P.Ex. 1), Plaintiff questions the following statements by Defendant, for the reasons

given below.  Plaintiff wishes to question Freedman and other officials of the United States

government under oath before a jury for additional evidence of perjury.

- *Based on seniority, plaintiff was assigned the second largest/windowed GS-14 office based on the drawing and the general location of her Directorate.*

    Defendant has not provided evidence in support of this statement.  Plaintiff recalls that

building blueprints were used during that time.  Plaintiff believes that the blueprints would show

11

not only the size of the offices at issue, but also the placement and number of windows and the layout of the furniture, all of which made the office assigned to Plaintiff a less professional office than the office she requested when the offices were still vacant, i.e., the one assigned to Best. At the time, Plaintiff had more seniority than Best.

- *Ms. Freedman did not measure the two offices herself but believed they were comparable.*

Plaintiff notes that, in addition to the points mentioned above, Freedman had been working in the building for a long period by that time (Plaintiff notes that Freedman stated in her *Declaration* that she arrived into the Treasury OIG in December 1994), and would have known by simple observation that the offices were in fact not comparable, as discussed above.

- *Ms. Freedman also noted (1) there were several other employees who were in slightly larger/smaller spaces than commensurate with their grade - some with much more significant differences in space than plaintiff's....*

Defendant has provided no evidence in support of this statement. First, Plaintiff questions the materiality of this statement, and secondly, Plaintiff certainly questions its veracity based on Freedman's indisputable perjury regarding other issues raised by Plaintiff in her complaint(s).

It should also be noted that Plaintiff raised the issue of office space and furniture on September 8, 2000, not on September 13 as Defendant states, as clearly evidenced in Defendant's own exhibit [#14, D.Ex. 5].

12

## 2. Non-Selection

### a. Deputy Assistant Inspector General for Program Audits under Vacancy Announcement Number OIG-01-009[11]

Defendant's statements in this section do not answer all of the claims, issues, and matters

raised by Plaintiff in her thirteenth formal administrative EEO complaint (P.Ex. 3), filed on

December 12, 2001,[12] with reference to her non-selection for promotion to Deputy Assistant

Inspector General (DAIG), a Senior Executive Service (SES) position.

[#1, 166-169]

In addition, Defendant's statements in this section do not provide all of the information that

is relevant to the selection of a DAIG for Program Audits, including the fact that the individual

initially selected, Barry Savill, declined the position. Plaintiff has questioned why, given that she

made the Best Qualified List for this position, she was not selected following Savill's

declination. In this context, Plaintiff also expressed concerns regarding preselection of

candidates in light of Freedman's comments to the effect that, due to Savill deciding to decline,

Freedman would have to *recruit another candidate* for the position (P.Ex. 4, Pgs. 10-11).

Plaintiff also questions Freedman's statements regarding Savill's experience given that

Defendant has not provided a copy of Savill's application and given Freedman's perjury in her

---

[11] An issue raised in Plaintiff's thirteenth formal administrative EEO complaint, a complaint which has not been acknowledged by Defendant as required by regulation.

[12] Defendant did not assign individual complaint numbers to the thirteenth, fourteenth, fifteenth, or sixteenth formal administrative EEO complaints that Plaintiff filed. These four EEO complaints and Plaintiff's twelfth EEO complaint, assigned TD 01-1155, are all subjects of this civil action. Copies of these five complaints are provided as P.Ex. 2-6.

*Declaration* [#14, D.Ex. 4], as documented in *Plaintiff Statement Regarding Defendant's False Statements and Perjury Before the Court* (P.Ex. 1).

In addition, Defendant simply does not address significant issues, such as the EEO statistics for the individual selected.[13]  Defendant does not provide a statement by former Inspector General Jeffrey Rush,[14] whom Freedman states was the selecting official for this position. Plaintiff questions the veracity of statements made by Freedman, based on her perjury in other areas, who claims she was the recommending official, including the comments regarding the nature of the responses to questions posed during the interview.

Plaintiff asserts that Freedman's interview notes [#14, D.Ex. 6] did not capture all that was said during the interviews.  In addition, Plaintiff notes that in his *Motion* Defendant provided a complete copy of the interview notes for Savill, but only a partial copy of the interview notes for Plaintiff.  Specifically, Questions 7, 8, and 9 and the corresponding responses were omitted from Freedman's interview notes for Plaintiff in Defendant's filing.  These questions, listed below, are certainly material to the matter at hand.  Plaintiff considers this another intentional misrepresentation by Defendant before the Court.

7. Our organization, not unlike others, has gone through and is likely to continue to go through change – how do your (*sic*) handle change?  How would you help your staff accept change?

---

[13] Plaintiff requested EEO statistics in discovery; Defendant was nonresponsive.
[14] Plaintiff considers this a serious omission by Defendant.  Plaintiff also notes that she was not interviewed by Inspector General Rush and believes that Rush has since retired.

8.  What is the most difficult decision you have has (*sic*) to make and why (preferable use a work-related example)? How did you work it out?

9.  What have you done to promote diversity in the workplace?

In addition, Plaintiff asserts that Freedman's statement that *plaintiff provided general responses to the questions posed whereas the selectee responded in more specific terms and gave personal accomplishments to illustrate his answers* is simply not true. Plaintiff cites Question 5 as just one example, in response to which Plaintiff, per Freedman's own notes, provided specific information about (1) her accomplishments as the Acting Director, Finance and Debt, (2) her role in the founding of the Treasury OIG Office of Oversight, (3) an IRS job that yielded significant results, and (4) the results of her *pro bono* work with a not-for-profit organization, for which Plaintiff received a leadership award. Plaintiff notes that Freedman was personally aware of Plaintiff's accomplishments as the Acting Director, Finance and Debt, and was highly complimentary of Plaintiff's performance during a more than 6 month period during which Plaintiff reported directly to Freedman. (P.Ex. 1, Lines 38-113) This simply appears to be another case where Freedman is purposefully misrepresenting material facts, i.e., committing perjury, in Plaintiff's cases.

It is an indisputable material fact that Plaintiff made the Best Qualified List, and thus met all of the requirements for the position of DAIG for Program Audit. Plaintiff respectfully questions whether Freedman had the expertise and managerial ability to make a selection for this position based on comments in her own *Declaration*. [#14, D.Ex. 4]

15

Plaintiff is unaware of Freedman having any program audit experience in the Treasury OIG

prior to being selected for the SES position of DAIG heading up program audit.  In addition,

Freedman stated that she determined Savill's field experience to be valuable because she

herself *possessed limited field experience[15]* [#20, Decl-MAF,[16] Par. 5] and that Savill

*appropriately pointed out that we, as an organization, lacked a reliable infrastructure[17]* [*id,*

Par. 6]. Freedman goes on to discuss the lack of a management information system, the lack

of a quality control group, and the need for better project planning and priority setting,

observations which Freedman considered *insightful and on target.* (*Id.*, Par. 6)  Plaintiff

asserts that the items listed as lacking indicate a serious failure on the part of Freedman and

others before her, such as current Deputy Inspector General Dennis Schindel,[18] as the

executives responsible for the Office of Audit.

---

[15] Plaintiff does not believe that Plaintiff's nonselection for promotion should be based on the recommending official's own lack of experience.  Field experience was neither a mandatory nor desirable qualification for the position (P.Ex. 3, G 1-4).  And, as previously stated, Plaintiff met all of the requirements for the position and was included on the Best Qualified List.  This is simply more evidence of pretext being used against Plaintiff.

[16] Defendant on November 3, 2005, filed a *Motion for Leave to File Declarations in Support of Defendant's Motion to Dismiss or for Summary Judgment* [#20].  This *Motion* included a *Declaration of Marla A. Freedman* (Decl-MAF) purported to have been executed on October 14, 2005, pursuant to 28 U.S.C. 1746, which included the following statement: *I declare under penalty of perjury that the foregoing is true and correct.*

[17] Plaintiff submits that these comments by Savill are a direct criticism of Freedman's, Schindel's, and other senior Treasury OIG managers' management of the organization.  Freedman appears to view Savill's comments as a plus, thereby personally admitting that Freedman herself, Schindel, and other senior Treasury OIG managers lacked the appropriate management skills to be in their positions and that this had been the case for many years, resulting in the lack of reliable infrastructure.

[18] Schindel had been the DAIG and the AIG for Audit prior to becoming the Deputy IG.

Plaintiff also challenges statements included in the *Declaration of Marla A. Freedman* [#20, Decl-MAF], as follows, with the numbers corresponding to paragraphs in the declaration.

Par. 1. Defendant has provided no documentary evidence of who were the recommending and selecting officials for the position of DAIG for Program Audit under Vacancy Announcement Number OIG-01-009. In addition, Defendant has not provided a statement by the individual identified as the selecting official. [Ref. 04cv0589 (JGP), #62, Exhibit B]

Par. 3. Freedman stated that in making her recommendation, she *carefully considered each candidate's response to the standard set of questions that I had asked.* Plaintiff questions how Freedman could make a selection for an SES position without taking other factors into account, including the detailed application package that is required to be submitted.

Par. 4 and 5. Defendant did not provide the application filed by Savill. Thus, Plaintiff questions statements made by Freedman regarding Savill's experience, including whether he personally testified before Congress. Plaintiff also notes that Plaintiff had extensive audit and oversight experience with Treasury law-enforcement bureaus and Offices (P.Ex. 1, Lines 197-209), including the Internal Revenue Service (IRS), Treasury's largest bureau, with which Savill apparently did not have experience based on Freedman's *Declaration.* Plaintiff does not agree with the manner in which Freedman characterizes Plaintiff's management and leadership experience. For example, Plaintiff's experience as

17

Acting Director for a period of more than 6 months, during which she reported directly to

Freedman, and her experience managing large multi-disciplinary teams, were reflected in

Plaintiff's application (P.Ex. 11) and discussed during the interview [#14, D.Ex. 6].

See further discussion at P.Ex. 1, Lines 36-113.

Par. 7.  Plaintiff also disagrees with the manner in which Freedman characterizes Plaintiff's

perspective.  *The ability to lead an organization, the ability to form working teams, external*

*liaison/coalition building, and operational issues (budget/allocation/awards)* were and are

all specific key issues facing the DAIG for Program Audit, a Senior Executive Service

position, as are the *ability to deliver the product and build our reputation.*  From

Freedman's statement that *...since she* (Plaintiff) *was already a member of the organization,*

*I expected her to focus...*  indicates that Freedman was applying different criteria to Plaintiff

than she applied to other (i.e., external) candidates.  Such an act is a violation of the Merit

System Principles.

## b. Deputy Assistant Inspector General for Program Audits under Vacancy Announcement Number OIG-01-043[19]

Plaintiff notes that she had applied and made the Best Qualified List for the position of

Deputy Assistant Inspector General for Program Audits under Vacancy Announcement

Number (VA#) OIG-01-009 a few months before the position was reannounced under

---

[19] An issue raised in Plaintiff's fifteenth formal administrative EEO complaint, a complaint which has not been acknowledged by Defendant as required by regulation.

VA# OIG-01-043.  The requirements for these two Senior Executive Service (SES) level

positions were essentially the same.  (P.Ex. 3 at G-2 and P.Ex. 5 at E-2)

Plaintiff asserts that the fact that she was not placed on the Best Qualified List under

VA# OIG-01-043 was a continuation of the long-term pattern and practice by the Department of

the Treasury of failure-to-promote, preselection of candidates, promotion of less-qualified

candidates, and manipulation of the Merit System Principles.  Robert Taylor, who was also

a Grade 14 employee, and who to Plaintiff's understanding is not a member of her protected

groups and was not on the Best Qualified List under VA# OIG-01-009, was selected for the

position.

Plaintiff's fifteenth formal administrative EEO complaint (P.Ex. 5) addresses concerns

surrounding this selection for promotion.  Plaintiff also raised concerns that two Special Act

Awards that should have been considered for this application were not processed in a timely

manner by Treasury OIG staff, were combined into one award, and were not taken into

consideration with her application.  Plaintiff asserts that these awards, had they been processed in

a proper and timely manner, may have been a determining factor in the selection process.

(P.Ex. 5, Pg.10)

During discovery, Plaintiff requested detailed information about the each of the selections for

promotion to the Grade 15 and Senior Executive Service (SES) positions that Defendant

addressed in the five subject formal administrative EEO complaints, including the names,

19

relevant statistics, and experience of the individuals selected, and the names and relevant statistics of the members of the Rating Panels.[20]  Plaintiff also requested information regarding those individuals who were given the opportunity to serve in an *Acting* capacity for these positions, but Defendant was nonresponsive.  [Ref. 04cv0589 (JGP), #62, Exhibit B, Par. 2 under *Interrogatories*.]

In addition, it should be noted that Plaintiff requested a copy of the complete applications filed by Plaintiff and by the individual selected for the position, the crediting plan or other document(s) explaining how the applications were to be evaluated, and the rating sheets completed by each member of the rating panel, among other relevant documents, but Defendant was nonresponsive.  [Ref. 04cv0589 (JGP), #62, Exhibit B, Item 2 under *Requests for Production of Documents*.]

## c.  Supervisory Auditor under Vacancy Announcement Number OIG-01-044[21]

Plaintiff's filing of April 17, 2006, *Plaintiff Statement Regarding Defendant's False Statements and Perjury Before the Court* (P.Ex. 1), addresses this section in that it provides indisputable evidence of perjury by Defendant with reference to the statements in this section, shown in *italics*, as follows.

---

[20] For an SES position, the rating panel may be referred to as the Executive Resources Board.
[21] An issue raised in Plaintiff's fourteenth formal administrative EEO complaint, a complaint which has not been acknowledged by Defendant as required by regulation.

- *Because the position was for the National Director of Enforcement Audits, Ms. Freedman selected Mr. Best based on his work in the enforcement audit area and due to his direct prior work experience with one of Treasury's enforcement bureaus, the Bureau of Alcohol, Tobacco and Firearms.*

    See P.Ex. 1, Lines 194-220.

- *Ms. Freedman also considered Mr. Best's audit achievements and accomplishments. Specifically, Mr. Best led the President's Committee on Integrity and Efficiency government-wide audit of debt collection improvement act results – a job which involved more than ten other Offices of Inspector General and which generated a significant amount of Congressional interest.  As difficult as it was, Mr. Best met all time frames required of the assignment.*

    See P.Ex. 1, Lines 221-287.

- *Ms. Freedman also gave consideration to unsolicited positive and supportive comments provided by Mr. Best's peers and subordinates.*

    See P.Ex. 1, Lines 288-309.

- *Ms. Freedman noted that, while plaintiff's work is thorough, it is generally not as timely as the work of others at her grade level.*

    See P.Ex. 1, Lines 310-364.

In further regards to the above,  Plaintiff cites Supreme Court of the United States, No. 99-536,

*Roger Reeves, Petitioner v. Sanderson Plumbing Products, Inc.*, Pgs. 11-12

    In reaching this conclusion, however, we reasoned that it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.  Specifically, we stated:

        "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may,

together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." Id., at 511.

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. See *id.,* at 517 ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright* v. *West,* 505 U. S. 277, 296 (1992); see also *Wilson* v. *United States,* 162 U. S. 613, 620-621 (1896); 2 J. Wigmore, Evidence §278(2), p. 133 (J. Chadbourn rev. ed. 1979). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Cf. *Furnco Constr. Corp.* v. *Waters,* 438 U. S. 567, 577 (1978) ("[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with *some* reason, based his decision on an impermissible consideration"). Thus, a plaintiffs prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

---

Plaintiff provides the following comments to the other exhibits included as part of

Defendant's *Motion to Dismiss or for Summary Judgment* [#14].

22

D.Ex. 3. Investigative Report, marked as *Received Aug 6 2002.*

Plaintiff respectfully asserts that the exhibit is not material to the case because

the investigation was not conducted in compliance with the regulations as required, i.e., within

180 days of the date of filing of Plaintiff's twelfth formal administrative EEO complaint.

D.Ex. 5. E-Mail Messages to/from Plaintiff and Floor Plan (6th floor)

Plaintiff notes that these documents are copies of exhibits Plaintiff submitted as part of

Plaintiff's twelfth formal administrative EEO complaint (P.Ex. 2, D-1 through D-5).

D.Ex. 7.    Memorandum for Jeffery Rush, Jr., Inspector General, from Kimberly Mingo,
Human Resources Specialist, through Marla Freedman, Assistant Inspector General for Audit,
Subject: Executive Resources Board Recommendations of the "Best Qualified" Candidates for
the Deputy Assistant Inspector General (DAIG) for Audit, ES-511, Vacancy Announcement
OIG-01-043.

Plaintiff asserts that this action evidences manipulation of the Merit System Principles.

Evidence clearly shows Plaintiff made the Best Qualified List a few months earlier for this

position and that the announcement was cancelled when the selectee, i.e., Barry Savill, who

Plaintiff believes was not a Hispanic Female over the age of 40, declined the position. Plaintiff

asserts that Defendant's proffered reason for leaving Plaintiff off the Best Qualified List for the

reannounced position evidences manipulation of the Merit System Principles and was pretext to

deny Plaintiff another merited promotion and so that Defendant could select Robert Taylor, who

Plaintiff believes was a Grade 14 and who was not a Hispanic Female over the age of 40.

23

<u>D.Ex. 8.</u>    Memorandum Opinion on 01cv0115 (CKK), filed January 22, 2002.

Plaintiff stands by her opposition to summary judgment [#19]; her appeal [#26] United States Court of Appeals Number 02-5088; and her Petition before the Supreme Court of the United States, No. 02-998. Summary judgment was granted to Defendant in 01cv0115 (CKK) without discovery, without a trial, and with Judge Kollar-Kotelly's apparent disregard of material evidence and Plaintiff's rights during the administrative EEO process.[22] Also, Plaintiff wishes to note that this decision was not based on the merits of Plaintiff's claims. As Judge Kollar-Kotelly clearly states in her decision, *To date, no agency or court has specifically addressed the merits of plaintiff's grievances.* (G.Ex. 8, Pg. 13). Plaintiff has requested that this case be reopened. Plaintiff asserts that the type and extent of pretext and perjury committed by the Defendant in the instant case and the circumstances surrounding this pretext and perjury which is based on indisputable evidence Plaintiff has placed on the record should lead a reasonable, objective, and fair factfinder to question the credibility of the Defendant in all defenses proffered by Defendant in all of Plaintiff's cases such that 01cv0115 (CKK) should be reopened.

Given all of the above, Plaintiff wishes to question the Defendant and other officials of the United States government under oath before a jury regarding decisions to select for promotion to

---

[22] Plaintiff believes that review by a fair, objective, and reasonable person would find that Plaintiff complied with the regulations and acted in accordance with previous commission (EEOC) decisions in cases similar to Plaintiff's.

24

the SES and Grade 15 levels[23] any and all individuals within the Treasury OIG since 1983 who, to Plaintiff's knowledge, were not members of her protected groups, i.e., Hispanic Female, and when appropriate, over the age of 40.

## II. STANDARD OF REVIEW

### A. Dismissal for Lack of Subject Matter Jurisdiction (Fed.R.Civ.P. 12(b)(1))

With regards to Defendant's statement, Plaintiff respectfully asserts that the Court has jurisdiction, with authority to refer criminal activity. Plaintiff refers the Court to *Plaintiff's Memorandum of Points and Authorities* for further discussion of FRCP 12(b)(1).

### B. Motion for Failure to State a Claim (Fed.R.Civ.P. 12(b)(6))

With regards to Defendant's statement, Plaintiff respectfully asserts that she has provided material facts in support of all of her claims in each of the five formal administrative EEO complaints. Plaintiff refers the Court to *Plaintiff's Memorandum of Points and Authorities* for further discussion of FRCP 12(b)(6).

### C. Summary Judgment (Fed.R.Civ.P. 56)

With regards to Defendant's statement, Plaintiff respectfully refers the court to the following holding by the Supreme Court of the United States, No. 00-1853 *Akos Swierkiewicz, Petitioner v. Sorema N.A.*, as was cited a the beginning of this opposition, and to No. 99-536, *Roger Reeves,*

---

[23] Plaintiff first made the best qualified list for a Grade 15 position in Treasury OIG in 1991, but was denied that merited promotion through pretext.

*Petitioner v. Sanderson Plumbing Products, Inc.,* [June 12, 2000] in which Justice O'Connor

delivered the opinion of the Court.

> In the analogous context of summary judgment under Rule 56, we have stated that the court must review the record "taken as a whole." *Matsushita Elec. Industrial Co.* v. *Zenith Radio Corp.,* 475 U. S. 574, 587 (1986). And the standard for granting summary judgment "mirrors" the standard for judgment as a matter of law, such that "the inquiry under each is the same." *Anderson* v. *Liberty Lobby, Inc.,* 477 U. S. 242, 250-251 (1986); see also *Celotex Corp.* v. *Catrett,* 477 U. S. 317, 323 (1986). It therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle* v. *Household Mfg., Inc.,* 494 U. S. 545, 554-555 (1990); *Liberty Lobby, Inc., supra,* at 254; *Continental Ore Co.* v. *Union Carbide & Carbon Corp.,* 370 U. S. 690, 696, n. 6 (1962). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby, supra,* at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See Wright & Miller 299.

Plaintiff refers the Court to *Plaintiff's Memorandum of Points and Authorities* for further

discussion of FRCP 56.

Plaintiff respectfully submits, based on the nature and extent of Defendant's pretext and

perjury in this case, that there is very little from Defendant that this Court or a jury should

believe, that, therefore, Defendant is not entitled to summary judgment, and that Plaintiff is

entitled to all damages requested.

## III.    DISPOSITION UNDER TITLE VII AND THE ADEA

### A. Discrimination Claims

In response, Plaintiff states that in her civil complaint Plaintiff claimed that defendant John W. Snow, Secretary of the Treasury, his staff, and his predecessors and their staffs, have committed, and are being allowed to commit, along with other officials of the United States government, a long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment against her in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 *et seq.*, based on her national origin (Hispanic); with special consideration given due to her being Cuban-American, having been born in Havana, Cuba; sex (female); age (D.O.B. October 8, 1952); and in reprisal for engaging in prior statutorily protected activity.  [1-9]

In regards to the instant case,[24] Defendant has never permanently promoted a Hispanic Female in the 511 series in the Treasury OIG to the Grade 15 or above.  Plaintiff asserts that this material fact and Defendant's admission indisputably evidences animus on the part of the Defendant towards Hispanic Females, and certainly with consideration to Plaintiff and her work record of high performance within the Treasury OIG for more than 20 years.

---

[24] Defendant admits that the Treasury OIG has never promoted a candidate who is both female and Hispanic in the 511 series. [#4, 106-109]

27

Plaintiff first joined the Treasury OIG in 1983. Plaintiff made the best qualified list for a Grade 15 position within the Treasury OIG in 1991. It is part of the record in that administrative EEO case, which is not a subject in the instant civil case, that Defendant used pretext to deny Plaintiff that merited promotion to the Grade 15 in 1991.

In addition, in 1989 Plaintiff conducted a survey at the personal request of her SES manager at the time OIG, Jay Weinstein, based on concerns employees had regarding a lack of minority representation in the Treasury OIG, that resulted in showing that Treasury OIG management had not been recruiting, retaining, or promoting minority employees. Plaintiff believes that this study also contributed to discrimination and retaliation being committed against her by Defendant and his staff.

Plaintiff asserts that it is clear that there has been a combination of discrimination and retaliation that has kept Plaintiff from merited advancement throughout her career with the Treasury OIG as evidence clearly shows.

Finally, Plaintiff wishes to point out that at the top of page 12 of Defendant's motion in this section it states that *As a general matter, therefore, to establish a prima facie case of discrimination on race or sex...* Plaintiff responds that she has never claimed race as a basis of discrimination.

28

**B. Retaliation Claim**

Plaintiff had provided statements, i.e., assisted, fellow employees in support of their EEO matters prior to her initiating her own formal EEO processes starting in 1995. Since December 1995, Plaintiff has been forced to file nineteen formal EEO complaints and four civil actions against Defendant in pursuit of her civil right to equal employment opportunity. In addition, as stated previously, in 1989 Plaintiff conducted a study at the personal request of her SES manager at the time, Jay Weinstein, that resulted in showing that Treasury OIG management had not been recruiting, retaining, or promoting minority employees. Plaintiff believes that this study also contributed to discrimination and retaliation being committed against her by Defendant and his staff.

As stated previously, Plaintiff asserts that Defendant has never permanently promoted a Hispanic Female over the age of 40 in the 511 series in the Treasury OIG to the Grade 15 or above. Plaintiff first joined the Treasury OIG in 1983. Plaintiff made the best qualified list for a Grade 15 position within the Treasury OIG in 1991. It is part of the record in that administrative EEO case, which is not a subject in the instant civil case, that Defendant used pretext to deny Plaintiff that merited promotion.

Plaintiff asserts that it has been a combination of discrimination and retaliation that has kept Plaintiff from merited advancement in her career in the Treasury OIG.

Plaintiff stands by her right by law to engage in protected activity, in supporting others or engaging in her own, and claims that evidence shows that officials of the United States government retaliate against those that do exercise their rights.

## IV. ARGUMENT

### A. Plaintiff's Conspiracy Claim Should Be Dismissed for Lack of Subject Matter Jurisdiction, or Alternatively, Failure to State a Claim.

Plaintiff asserts that she has provided sufficient indisputable evidence such that the Court should refer certain officials of the United States government for prosecution under the conspiracy statute.

It is indisputably clear that certain officials at the Department of the Treasury and certain officials at the EEOC have used their positions, status, and authority in a cooperative manner to deny Plaintiff her civil right to equal employment opportunity since at least 1995, with officials at the Department of the Treasury using their positions, status, and authority in a cooperative manner to deny Plaintiff merited career advancement and thus her civil right to equal employment opportunity throughout her career with the Treasury OIG. Plaintiff asserts that evidence in this case clearly demonstrates this material fact.

### B. Plaintiff's Complaint Should Be Dismissed in Its Entirety for Failure to Cooperate with the Agency's EEO Investigation.

Defendant's argument is frivolously made based on Plaintiff's earlier discussion, which indisputably shows by evidence that Defendant violated the regulations in regards to the

30

processing of Plaintiff's five formal administrative EEO complaints and that, further, with reason Plaintiff was not obligated to participate in the investigation.

## C. Plaintiff Has Failed to Exhaust Her Administrative Remedies on Certain Claims Alleged in Her Complaint.

Defendant's argument is frivolously made.  Defendant's statement at the bottom of page 20 of his motion that plaintiff's claims are limited to those accepted for investigation (Ex. 2) – allegations related to office space, the three nonselections and disparate impact – and all other claims described in plaintiff's civil complaint should be dismissed for failure to exhaust administrative remedies simply lacks any semblance of substance or logic.

EEOC MD 110, CHAPTER 6, DEVELOPMENT OF IMPARTIAL AND APPROPRIATE FACTUAL RECORDS I.  INTRODUCTION Section 1614.108(b), of Title 29 C.F.R., requires that "the agency shall develop an impartial and appropriate factual record upon which to make findings on the claims raised by the written complaint."  An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred.

Based on Plaintiff's earlier discussion it is clearly shown that Defendant violated the regulations and purposefully misrepresented Plaintiff's five filings and the claims made in the five formal administrative EEO complaints that are the subjects in the instant civil action.  It is indisputable that Defendant clearly addressed allegations related to office space, the three

31

nonselections[25] and disparate impact in Freedman's *Declaration*, which Plaintiff has indisputably shown by evidence is perjurious.

Plaintiff asserts that Defendant knowingly came to Court believing that he could get five of Plaintiff's formal administrative EEO complaints dismissed while misrepresenting to the Court all five of the complaints Plaintiff had filed, all of the claims, issues, and matters that Plaintiff had raised in the five complaints, and all of the evidence Plaintiff had provided in the five complaints that are the subjects in the instant civil action. Plaintiff asserts that sanctions should be placed on Defendant for his unworthy behavior.

## D. Plaintiff's Claim Related to Her Office Space is Not an Adverse Action.

Defendant's argument is frivolously made. Plaintiff has provided indisputable evidence that Defendant's reasoning in the assignment of office space was pretextual and perjurious, and that she was purposefully and with forethought assigned less professional space and was assigned space that was not in keeping with her seniority. The assigned spaces at issue were there for everyone to see, affecting Plaintiff's stature in the Treasury OIG in a negative way, which is an adverse act. (P.Ex. 1, Lines 114-172). Plaintiff asserts that these actions evidence a hostile work environment.

---

[25] The three nonselections Defendant refers to were raised by Plaintiff in three separate complaints i.e., 3 of the 5 that are the subjects of this civil action. Therefore, defendant acknowledges certain claims in certain complaints but not all claims in all complaints as required by regulation.

**E. Defendant Had Legitimate, Nondiscriminatory Reasons for Its Selection Determinations.**

Defendant's argument is frivolously made. Plaintiff has provided indisputable evidence that Defendant's reasoning for his selection determinations were pretextual and perjurious. Ref. P.Ex. 1.

**F. Plaintiff's Disparate Impact Claim Must Be Dismissed for Failure to State a Claim.**

Defendant's argument is frivolously made. Plaintiff asserts that Defendant has never permanently promoted a Hispanic Female over the age of 40 in the 511 series in the Treasury OIG to the Grade 15 or above. Plaintiff has provided indisputable evidence that Defendant's reasoning for his adverse actions in the instant case were pretext and that statements made in support of Defendants actions were perjurious. Ref. P.Ex. 1.

In addition, in 1989 Plaintiff conducted a survey at the personal request of her SES manager at the time OIG, Jay Weinstein, based on concerns employees had regarding a lack of minority representation in the Treasury OIG, that resulted in showing that Treasury OIG management had not been recruiting, retaining, or promoting minority employees. Plaintiff believes that this study also contributed to discrimination and retaliation being committed against her by Defendant and his staff. Finally, as indisputable evidence of disparate impact, Defendant freely admits that the Treasury OIG has never promoted a candidate who is both female and Hispanic in the 511 series. [#4, 106-109]

33

## V. Conclusion

For the reasons stated herein, Plaintiff respectfully states that, based on indisputable evidence and the overwhelming number of misleading, false, and perjurious statements made by Defendant before this Court, Defendant does not merit and is not entitled to summary judgment. As such, Plaintiff respectfully requests that Defendant's *Motion to Dismiss or for Summary Judgment* [#14] be denied in its entirety; that Defendant provide full and complete responses to all of Plaintiff's discovery requests; that Defendant produce any and all witnesses that Plaintiff wishes to call at trial; and that a trial date is set.

Respectfully Submitted,

Maria V. Carmona, *pro se*
8306 Haven Hill Court
Laurel, Maryland 20723
(301) 490-4328

34