*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

| | |
|---|---|
| **MARIA V. CARMONA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 05-1194 (JGP)** |
| | ) |
| **JOHN W. SNOW,** | ) |
| **Secretary of the Treasury,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

<u>**MEMORANDUM OPINION**</u>

_____Defendant has filed a **Motion to Dismiss or for Summary Judgment [#14]** ("Def.'s

Mot.")[1], which

> moves for dismissal of *plaintiff's conspiracy claim* brought pursuant
> to 18 U.S.C. § 241 for lack of subject matter jurisdiction or for failure
> to state a claim upon which relief can be granted. Pursuant to Rules
> 12(b)(6) or 56 of the Federal Rules [of Civil Procedure], defendant
> moves to dismiss or for summary judgment on *plaintiff's remaining
> claims* - i.e., those *brought pursuant to Title VII* of the Civil Rights
> Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, *and the Age
> Discrimination in Employment Act* of 1967, as amended, 29 U.S.C.
> § 621.

Def.'s Mot., at 1-2 (emphasis added).[2]  Plaintiff, who is *pro se* and has "never been represented

by an attorney in any of [her] administrative proceedings[,]" Complaint [#1] ("Compl."), at ¶¶

31-32, opposes defendant's Motion on the grounds "that Defendant has not made the requisite

---

[1]  The Court will use the abbreviation "Def.'s Memo" when citing the accompanying Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or for Summary Judgment.

[2]  When referencing the Age Discrimination in Employment Act, 29 U.S.C. § 621, the Court will use the abbreviation "ADEA."

showing to entitle him to summary judgment; that Defendant has [] committed perjury in his

representations before th[e] Court; and that there are genuine issues of material fact that remain

in dispute such that they can only be resolved by a jury." Plaintiff's Opposition to Defendant's

Motion to Dismiss or for Summary Judgment [#26] ("Pl.'s Opp."), at 2.

As explained more fully below, the Court concludes that plaintiff has raised no genuine

issue of material fact with regard to her discrimination and retaliation claims, and her conspiracy

claim should fail as a matter of law.  Consequently, defendant's Motion will be granted.

## BACKGROUND

Plaintiff, who is "a Hispanic White Female"[3] over the age of 40, has worked at the

Department of Treasury's Office of the Inspector General ("OIG") since 1983. Compl., at ¶¶ 40-

41, 100.  She has filed at least seventeen administrative complaints and four civil actions,

including the instant case. Compl., at n.1.  Plaintiff contends that defendant has engaged in "a

long-term pattern of discrimination, retaliation, disparate treatment and . . . conspiracy [] against"

her. *Id.* at ¶¶ 43-45.  She further contends that defendant subjected her to "a hostile/harassing

work environment[.]" *Id.* at ¶ 44.

Specifically, plaintiff alleges that defendant's failure to promote her beyond grade 14 is a

*prima facie* case of age, national origin and gender discrimination.[4] Compl., at ¶¶ 106-109 & n.5.

---

[3]  Plaintiff was born in Havana, Cuba. Plaintiff's Report Pursuant to Local Civil Rule 16.3 [#9], at 2.

[4]  Title VII dictates that it is unlawful to "discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or *national origin*." 42 U.S.C. § 2000e-2(a) (emphasis added).  Similarly, the ADEA "prohibit[s] arbitrary age discrimination in employment[.]" 29 U.S.C. § 621(b).

Plaintiff also expresses dissatisfaction with her office space, which she further alleges in support of her age, national origin and gender discrimination claims. Plaintiff's Response to Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or for Summary Judgment [#26] ("Pl.'s Memo"), at 10.

With regard to her retaliation claim[5], plaintiff alleges that she was forced to perform grade 7 level work, which she describes as "a humiliating ordeal . . . ." Compl., at ¶¶ 206-213.  Also in furtherance of her retaliation claim, plaintiff alleges that Treasury Inspectors General Jeffery Rush Jr. and Dennis Schindel made comments in public forums which she "found, and still find[s], . . . to be extremely oppressive, threatening, and intimidating[.]" *Id.*

And with regard to her conspiracy claim, plaintiff alleges the following:

> In [] regards to conspiracy, I claim that, [] *the U.S. Attorney has defended and is defending the Secretary of the Treasury in my three civil actions* and as such has access to all my submittals in my three civil actions, that the U.S. Attorney has been aware of and is aware of indisputable evidence in support of my claims to a long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment; and has been aware of and is aware of sufficient direct and circumstantial evidence of conspiracy by officials of the United States government being committed against me.

---

[5]   The legal claim of retaliation is also codified within Title VII, which provides the following in relevant part:

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has *made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.*

42 U.S.C. § 2000e-3(a) (emphasis added).

Compl., at ¶¶ 260-266 (emphasis added).

On March 16, 2005, the Equal Employment Opportunity Commission ("EEOC") issued a decision denying plaintiff's administrative claim. *Id.* at ¶¶ 34-37; *see generally* Plainitff's Exhibit A. Following the denial, which exhausted plainitff's administrative remedies[6], she brought legal action in this Court. Compl., at ¶¶ 37-39.

## LEGAL STANDARD

### I.    Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim upon which relief can be granted should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957). Such a motion "necessitates a ruling on the merits of the claim[.]" *Mortensen v. First Federal Sav. & Loan Asso.*, 549 F.2d 884, 891 (3d Cir. 1977). All of the plaintiff's factual allegations are accepted as true and all inferences are drawn in the plainitff's favor. *Id.* "If the court considers *matters outside the pleadings* before it in a 12(b)(6) motion, the above procedure will *automatically be converted into a Rule 56 summary judgment procedure*." *Id.* (citing 5 C. Wright and A. Miller, Federal Practice and Procedure § 1350 (1969) (emphasis added)). A court "will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions

---

[6] Defendant argues that plaintiff has failed to exhaust her administrative remedies. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or for Summary Judgment [#31] ("Def.'s Reply"), at 1-2. The Court is unpersuaded by this argument and concludes that the exhaustion doctrine should not serve as the rationale for dismissal of plaintiff's case. The EEOC issued a decision which it characterized as "final," and further stated that plaintiff had the "*right to file a civil action* in an appropriate United States District Court . . . ." Plaintiff's Exhibit A, at 2 (emphasis added). Acting on this information and belief, plaintiff appropriately filed this case.

cast in the form of factual allegation" when addressing a motion to dismiss for failure to state a claim. *Kelley v. Edison Twp.*, 2006 U.S. Dist. LEXIS 23510, at *15 (D.N.J. April 25, 2006) (citation omitted).

## II.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

Upon considering a motion to dismiss for lack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891 n.16 (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72, 59 S. Ct. 725 (1939) (other citations omitted)).  The motion rests on the legal insufficiency of a claim and may be granted only if the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

## III.     Motion for Summary Judgment

Just as when reviewing a motion to dismiss for failure to state a claim, when reviewing a motion for summary judgment, the record is viewed in the light most favorable to the plaintiff. *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).  A court should not grant a summary judgment motion unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is *no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law*." *Duncan v. Wash. Metro. Area Transit Auth.*, 425 F. Supp. 2d 121, 125 (D.D.C. 2006) (citing Fed. R. Civ. P. 56) (emphasis added).  "Material facts are those that 'might affect the

outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S.

242, 248, 106 S. Ct. 2505 (1986)).  "[T]he non-moving party cannot rely on 'mere allegations or

denials . . ., but . . . must set forth specific facts showing that there [are] genuine issues for trial.'"

*Worth v. Jackson*, 377 F. Supp. 2d 177, 180-81 (D.D.C. 2005) (quoting *Anderson*, 477 U.S. at

248) (alterations in original).

## IV.    Wider Latitude Afforded *Pro Se* Plaintiffs

Courts are guided by the principle that *pro se* plaintiffs are usually subjected to less

exacting standards than plaintiffs who are represented by attorneys. *Haines v. Kerner*, 404 U.S.

519, 520, 92 S. Ct. 594 (1972).  "[D]istrict courts have . . . strong incentives for ensuring

adequate representation for *pro se* plaintiffs."[7] *Ficken v. Alvarez*, 331 U.S. App. D.C. 37, 146

F.3d 978, 981 (D.C. Cir. 1998).  However, this enduring legal principal does not relieve an

unrepresented plaintiff of the burden of establishing her *prima facie* case. *See*, e.g., *Moore v.*

*Agency for Int'l Dev.*, 301 U.S. App. D.C. 327, 994 F.2d 874, 876 (D.C. Cir. 1993).

---

[7] To that end, the Court notes that on September 21, 2005, it issued a Fox-Neal Order
[#11] informing plaintiff of the requirements under Federal Rule of Civil Procedure 56 governing
Motions for summary judgment.  Plaintiff was "advised that the facts asserted in defendant's
motion, and supporting documents and affidavits, will be accepted as true unless plaintiff
submits her own affidavits or other evidence contradicting defendant's assertions." Fox-Neal
Order, at 2; *see Fox v. Strickland*, 267 U.S. App. D.C. 84, 837 F.2d 507 (1988) (holding that a
district court must take pains to advise a *pro se* litigant of the consequences of failing to respond
to a dispositive motion); *Neal v. Kelly*, 295 U.S. App. D.C. 350, 963 F.2d 453 (1992) (holding
that *pro se* plaintiffs must be advised that factual assertions in a motion for summary judgment
will be accepted as true unless plaintiff submits his own affidavits or other evidence
contradicting the assertion).  Plaintiff has demonstrated her understanding of this legal principle.
*See* Plaintiff's Statement of Genuine Issues of Material Fact That Are in Dispute [#26] ("Pl.'s
Fact Statement"), at 1 ("It is [] Plaintiff's understanding that she must set forth specific facts
showing there is a genuine issue of material fact for trial in order to overcome Defendant's
motion for summary judgment.").

**ANALYSIS**

I.    **Alleged Administrative Errors**

Plaintiff devotes a sizeable portion of her Opposition to discussing what she believes to be errors of omission and commission made by adjudicators and defense counsel at the administrative phase of her case. *See* Pl.'s Opp., at 5; Pl.'s Memo, at 3.  However, the Court expresses no opinion on the matter because plaintiff is entitled to "a de novo 'civil action' equivalent to that enjoyed by private-sector employees." *Contreras v. Ridge*, 305 F. Supp. 2d 126, 131 (D.D.C. 2004) (quoting *Chandler v. Roudebush*, 425 U.S. 840, 863, 96 S. Ct. 1949 (1976) (other citations omitted)).  In other words, "'the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion.'" *Id*. (quoting *Doe v. United States*, 261 U.S. App. D.C. 206, 821 F.2d 694, 697-98 (D.C. Cir. 1987) (other citation omitted)).  Accordingly, the Court will not address the alleged administrative errors because they have no impact on its disposition of defendant's Motion.

II.    **Conspiracy Claim**

The Court next considers plaintiff's conspiracy claim.  Defendant argues that the claim should be dismissed because "18 U.S.C. § 241[,] which addresses civil rights *criminal* conspiracy violations[,] does not give rise to a private right of action." Def.'s Memo, at 15 (citing *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir.1989); *Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996)).  Defendant also argues that plaintiff cannot legally sustain her conspiracy claim under the federal civil rights statutes. *Id*.  In response, plaintiff argues "that she has provided sufficient indisputable evidence such that the Court should refer certain officials of the United States

7

government for prosecution under the conspiracy statute." Pl.'s Memo, at 30.  Plaintiff's

argument fails for the reasons below.

It is indeed a correct statement of law that § 241, a criminal statute, does not provide a

private right of action. *Risley*, 918 F. Supp. at 21.  Plaintiff relies on § 241 in support of her

conspiracy claim. Pl.'s Opp., at 4.  Nonetheless, were plaintiff to rely on 42 U.S.C. § 1985(3)

alternatively, which establishes a private right of action where "a conspiracy by two or more

persons" is proven, this attempt would fail as well because "[n]either § 1985 *nor any other*

*provision of the Civil Rights Act* may provide the basis for an action against the United States or

a Federal agency." *Biase v. Kaplan*, 852 F. Supp. 268, 280 (D.N.J. 1994) (emphasis added);

*accord Hohri v. United States*, 251 U.S. App. D.C. 145, 782 F.2d 227, 245 n.43 (D.C. Cir. 1986)

(explaining that §§ 1981, 1982, 1985 and 1986 "by their terms, do not apply to actions against

the United States."), *vacated on other grounds*, 482 U.S. 64, 107 S. Ct. 2246 (1987).

Accordingly, plaintiff's conspiracy claim will be dismissed as a matter of law.

## III.    Discrimination Claims[8]

The test for analyzing Title VII claims was established by the Supreme Court in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  To withstand a

motion for summary judgment under the *McDonnell Douglas* test, the plaintiff must establish

---

[8]  Plaintiff appears to assert "disparate treatment" and "a hostile/harassing work environment" as separate and distinct claims from her age, national origin and gender discrimination claims. Compl., at ¶¶ 43-45.  Nonetheless, the Court considers both of these assertions in conjunction with plaintiff's discrimination claims because *both* the ADEA and Title VII address claims of disparate treatment and hostile work environment. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S. Ct. 849 (1971); 29 U.S.C. § 621 *et seq.*; *see also International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843 (1977).

that (1) she is a member of a protected class; (2) she suffered an adverse employment action by her employer; and (3) she was qualified for the position for which she applied but was treated less favorably than others who are not in her protected class. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998). "[I]f the plaintiff succeeds in [establishing] the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089 (1981) (citation and internal quotation marks omitted). And if the defendant meets this burden, the plaintiff must then demonstrate that the defendant's proffered reason is a pretext for discrimination. *Id*. Despite this burden-shifting between the parties, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id*. (citations omitted).

Age discrimination claims are decided in accordance with the standards set forth within the ADEA. 29 U.S.C. § 621 *et seq*. Such claims "are [likewise] analyzed under the test developed for Title VII plaintiffs in *McDonnell Douglas*." *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 818 (5th Cir. 1990). To withstand a motion for summary judgment under the ADEA, a plaintiff must establish that (1) she is between forty and seventy years old; (2) she was qualified for the position at issue; and (3) an employee outside of her protected class was treated more favorably than she was. *Id*. "An employer may rebut that presumption by articulating some legitimate, nondiscriminatory reason for its action." *Id*. (citation omitted). "If an employer carries that burden, the plaintiff may establish discrimination by showing that the reason is merely pretextual . . . ." *Id.* (citation omitted) (emphasis added).

Regarding the claims of age, national origin and gender discrimination, which defendant

denies, plaintiff has failed to establish her *prima facie* case under the ADEA or Title VII.

**A.    Denial of Promotions**

With regard to her claim that she was improperly denied grade 15 promotions because of her age, national origin and gender, plaintiff specifically refers to the following positions: "Deputy Assistant Inspector General for Program Audits under Vacancy Announcement Number OIG-01-009[,]" "Deputy Assistant Inspector General for Program Audits under Vacancy Announcement Number OIG-01-043[,]" and "Supervisory Auditor under Vacancy Announcement Number OIG-01-044."[9] Pl.'s Memo, at 13, 18, 20.

**i.    Protected Class Status**

Plaintiff has satisfied the first requirement of the *McDonnell Douglas* test with respect to her ADEA and Title VII claims because she has established that she is among the classes of persons protected under those statutes. *See* Compl., at ¶ 9 (listing plaintiff's date of birth as "October 8, 1952"); *id.* at ¶ 40 (describing plaintiff as "a Hispanic White Female[.]").

**ii.    Adverse Employment Action**

Plaintiff has also succeeded in establishing the second requirement of the *McDonnell Douglas* test under both the ADEA and Title VII.  This is so because among other things, plaintiff alleges that she was improperly denied three grade 15 *promotions*, where other less-qualified people were promoted and/or offered the promotions. *See* Pl.'s Memo, at 23 (stating that "Barry Savill, who Plaintiff believes was not a Hispanic Female over the age of 40," was

---

[9]  The Court will hereafter refer to these positions by their Vacancy Announcement Numbers.

offered a promotion but "declined the position."); *id.* (discussing the promotion of "Robert

Taylor, who Plaintiff believes was . . . not a Hispanic Female over the age of 40.").[10]  "While this

circuit has not exhaustively defined what constitutes an adverse employment action . . . , 'courts

have consistently focused on . . . hiring, granting leave, *promoting*, and compensating[.]'" *Walker

v. Washington Metro. Area Transit Auth.*, 102 F. Supp. 2d 24, 28 (D.D.C. 2000) (quoting *Taylor

v. FDIC*, 328 U.S. App. D.C. 52, 132 F.3d 753, 764 (D.C. Cir. 1997) (emphasis added)).


### iii.    Qualifications for Positions

Regarding the third requirement under *McDonnell Douglas*, plaintiff has failed to

establish that she was qualified for Vacancy Announcement Number OIG-01-043.  Defendant

argues that plaintiff was not qualified for the position because she failed to make OIG's best

qualified list.  Def.'s Reply, at 3 n.1.  Plaintiff does not dispute this assertion, but argues "that

Defendant's proffered reason for leaving [her] off the Best Qualified List" "evidences

manipulation of the Merit System Principles[.]"  Pl.'s Memo, at 23.

In light of her *pro se* status, the Court issued an Order [#32] on October 25, 2006 which

allowed plaintiff to provide an additional submission clarifying her position regarding Vacancy

Announcement Number OIG-01-043.  Pursuant to the Court's Oder, plaintiff was to "provide . . .

a description of the *nature of the position and its requirements, and evidence, if any, that she was

qualified for the position.*"  *Id*. (emphasis in original).  The Court also directed that "[p]laintiff's

---

[10]  Plaintiff further alleges that she was denied adequate office space because of her age, national origin and gender, *see id.* at 12 ("[T]he office assigned to Plaintiff [was] *a less professional office than the office she requested . . . .*" (emphasis added)), which the Court addresses below.

submission . . . be in a form consistent with the framework for analyzing Title VII claims established by the Supreme Court in *McDonnell Douglas* . . . ." *Id*. at 1-2.

In responding to the Court's Order, plaintiff asserted that she was qualified for Vacancy Announcement Number OIG-01-043 because Edith A. Greenip emailed her that "[y]ou were qualified for the DAIGA position."[11] Response to Order of the Court [#33], at 2. Plaintiff attached that email to her response. Plaintiff referred to Greenip as "appropriate OIG personnel[,]" *id.*, yet failed to explain who Greenip is and whether she is/was qualified to make such a determination. Moreover, even if Greenip is/was qualified to make this determination, it is unclear from the email whether Greenip was referring to Vacancy Announcement Number OIG-01-043 *or* Vacancy Announcement Number OIG-01-009, for which plainitff had previously been deemed qualified by the Agency. Thus, plainitff has failed to provide tangible, *unambiguous* evidence to rebut defendant's argument that she was not qualified for Vacancy Announcement Number OIG-01-043.

However, plaintiff has established that she was qualified for Vacancy Announcement Numbers OIG-01-009 and OIG-01-044 respectively. *See* Def.'s Reply, at 3 n.1 ("Plaintiff . . . made the *best qualified* list for Vacancy No. OIG-01-009 . . . . (emphasis added)); *cf.* Def.'s Memo, at 9 (noting that "the selecting official for the Supervisory Auditor position" under Vacancy Announcement Number OIG-01-044 characterized "plaintiff's work [a]s *thorough* . . . ." (emphasis added)).

---

[11] DAIGA appears to refer to the position of Deputy Assistant Inspector General for Program Audits, which was announced first under Vacancy Announcement Number OIG-01-009 and then announced under Vacancy Announcement Number OIG-01-043.

iv.    **Treatment of Those Outside of Protected Status**

And regarding the third requirement under *McDonnell Douglas*, plaintiff has succeeded in establishing that at least two people outside of her protected class were treated more favorably than she was.  Again, Barry Savill was offered Vacancy Announcement Number OIG-01-009, Pl.'s Memo, at 19, and "Alex Best, another GS-14 audit manager," was "selected" to fill Vacancy Announcement Number OIG-01-044. Def.'s Memo, at 6, 8.  Plaintiff was rejected for both positions. Pl.'s Memo, at 13-20.  Having met this requirement, plaintiff has also satisfied her burden of establishing *prima facie* cases of age, national origin and gender discrimination with regard to Vacancy Announcement Numbers OIG-01-009 and OIG-01-044.  The burden now shifts to defendant to articulate legitimate, nondiscriminatory reasons for its actions. *Deloach*, 897 F.2d at 818.

v.    **Shifting Burdens**

Concerning Vacancy Announcement Number OIG-01-009, defendant states that

> the recommending official for this position . . . . [, b]ased on her assessment of the information presented by each candidate, . . . recommended a candidate other than plaintiff for the position. . . . Notably, during the interviews, *plaintiff provided general responses to the questions posed whereas the selectee responded in more specific terms and gave personal accomplishments to illustrate his answers*.

Def.'s Memo, at 7 (internal citations omitted) (emphasis added).  And concerning Vacancy Announcement Number OIG-01-044, defendant states:

> Because the position was for the National Director of Enforcement Audits, [the selecting official for the Supervisory Auditor position] selected Mr. Best based on his work in the enforcement audit area and due to his direct prior work experience with one of Treasury's

13

> enforcement bureaus, the Bureau of Alcohol, Tobacco and Firearms.
> . . . Mr. Best led the President's Committee on Integrity and
> Efficiency government-wide audit of debt collection improvement act
> results - a job which involved more than ten other Offices of
> Inspector General and which generated a significant amount of
> Congressional interest. [] As difficult as it was, Mr. Best met all time
> frames required of the assignment. . . . [W]hile plaintiff's work is
> thorough, it is generally not as timely as the work of others at her
> grade level.

*Id.* at 8-9 (internal citations omitted).

If true, the preceding explanations of defendant's conduct in selecting individuals other

than plaintiff to fill Vacancy Announcement Numbers OIG-01-009 and OIG-01-044 would not

violate the ADEA or Title VII. 29 U.S.C. § 621 *et seq.*; 42 U.S.C. § 2000e *et seq.*  And as

defendant has met its burden of presenting nondiscriminatory reasons for its decisions regarding

both positions, the burden shifts back to plaintiff to establish discrimination by showing that

defendant's reasons are pretextual.[12] *Burdine*, 450 U.S. at 253.

Plaintiff states the following to establish pretext regarding Vacancy Announcement

Number OIG-01-009:

> Plaintiff questions the veracity of statements made by [the
> recommending official for this position], based on her perjury in other
> areas, . . . including the comments regarding the nature and responses
> to questions posed during the interview.
>
> Plaintiff asserts that [the recommending official]'s interview
> notes [] did not capture all that was said during the interviews.
>
> In addition, Plaintiff asserts that [the] statement that *plaintiff
> provided general responses to the questions posed whereas the*

---

[12] To establish pretext in this case, plaintiff must *both* discredit defendant's asserted
reasons and demonstrate that the circumstances permit drawing the reasonable inference that the
real reason is her age, national origin or gender. *Johnson v. AT&T Corp.*, 422 F.3d 756, 763 (8th
Cir. 2005).

14

> *selectee responded in more specific terms and gave personal
> accomplishments to illustrate his answers* is simply not true.
>
> Plaintiff respectfully questions whether [the recommending
> official] had the expertise and managerial ability to make a selection
> for this position . . . .

Pl.'s Memo, at 14, 15 (emphasis in original).

Questioning the truthfulness of the recommending official's statements, accusing the

official of perjury, and questioning whether the official had the expertise and ability to make a

selection for the position at issue does not permit the Court to draw an inference – reasonable or

otherwise – that the actual reason that plaintiff was rejected for promotion to Vacancy

Announcement Number OIG-01-009 was her age, national origin or gender.  Plaintiff's

preceding statement only speculates as to the reason she was rejected for the job. *But see*

*Edwards v. Niles Sales & Serv.*, 2006 U.S. Dist. LEXIS 50088, at *72 (D. Fla. June 27, 2006)

("[T]he plaintiff must show . . . more evidence than mere . . . speculative possibilities.").

To establish pretext regarding Vacancy Announcement Number OIG-01-044,

plaintiff quotes extensively from *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120

S. Ct. 2097 (2000).  In that case, the Supreme Court held that

> [t]he factfinder's disbelief of the reasons put forward by the defendant
> (particularly if disbelief is accompanied by a suspicion of mendacity)
> may, *together with the elements of the prima facie case*, suffice to
> show intentional discrimination. Thus, rejection of the defendant's
> proffered reasons will permit the trier of fact to infer the ultimate fact
> of intentional discrimination.

530 U.S. 133, 147, 120 S. Ct. 2097 (emphasis added).

There are two problems with plaintiff's reliance on *Reeves*.  First, despite plaintiff's

myriad accusations that defendant has perjured itself, the Court finds no reason to disbelieve

15

defendant, nor does the Court carry "a suspicion of [defendant's] mendacity[.]" *Id*.  And second, plaintiff has provided no *specific facts* to rebut defendant's explanation that Best was offered Vacancy Announcement Number OIG-01-044 because he was the *best qualified* person for the job. *But see* Pl.'s Fact Statement, at 1 ("It is [] Plaintiff's understanding that she must set forth *specific facts* . . . to overcome Defendant's motion for summary judgment." (emphasis added)); *see also Reeves*, 530 U.S. at 147 (noting that even the fact-finder's "disbelief" must fit "*together* with the elements of the *prima facie* case . . . . (emphasis added)).

For these reasons, plaintiff has failed to meet her burden of establishing pretext regarding Vacancy Announcement Numbers OIG-01-009 and OIG-01-044.

**B.     Adequacy of Office Space**

Plaintiff also claims age, national origin and gender discrimination on the basis of the assignment of what she believes to be inadequate office space, and has alleged the following in support thereof:

> Plaintiff wishes to question . . . officials of the United States government under oath before a jury for additional evidence of perjury.
>
> . . .
>
> Plaintiff believes that [building] blueprints would show not only the *size of the offices at issue*, but also *the placement and number of windows and the layout of furniture*, all of which made the office assigned to Plaintiff *a less professional office than the office she requested* when the offices were still vacant, i.e., the one assigned to Best.  At the time, Plaintiff had more seniority than Best.
>
> . . .
>
> It should be noted that Plaintiff raised the issue of office space and furniture on September 8, 2000, not on September 13 as Defendant states . . . .

Pl.'s Memo, at 11-12 (emphasis added).  Defendant responds to plaintiff's allegations this way:

> Based on seniority, *plaintiff was assigned the second largest/windowed GS-14 office based on the drawing and the general location of her Directorate*. [] Shortly after moving into her new office, plaintiff [stated] . . . that her office in comparison with the one next to it, which was assigned to [] Best, . . . was *some inches smaller* and requested to be switched. . . . [T]here were several other employees *who were in slightly larger/smaller spaces than commensurate with their grade* - some with much more significant differences in space than plaintiff's, and . . . *Best had already unpacked*. [] . . . [P]laintiff was offered *two opportunities* to move into larger space - the first in November 2001 and the second in May 2002 - *but declined both offers* . . . .

Def.'s Memo, at 6-7 (internal citations omitted) (emphasis added).

As explained *supra*, the law requires plaintiff to demonstrate that she suffered an "adverse employment action" as a means of proving her *prima facie* case. *Deloach*, 897 F.2d at 818.  However, plaintiff has provided no authority, and the Court knows of none, which indicates that being "assigned the second largest/windowed [] office" "[b]ased on seniority," which is only "inches smaller" than the largest office available, is an "adverse employment action" under either the ADEA or Title VII. *See supra* ANALYSIS, III., A., 2 (discussing "adverse employment action" as is meant within this circuit); *see also Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) ("We define an adverse employment action as a *materially adverse change* in the terms and conditions of employment[,]" which "*must be more disruptive than a mere inconvenience* or an alteration of job responsibilities.") (citation and internal quotation marks omitted) (emphasis added)); *Vann v. Southwestern Bell Tel. Co.*, 179 Fed. Appx. 491, 496 (10th Cir. 2006) (noting that "actions presenting nothing beyond *a mere inconvenience* or an insignificant alteration of responsibilities do not constitute adverse employment action."

17

(citations, alterations and internal quotation marks omitted) (emphasis added)).

Although plaintiff certainly has established that her assigned office is an inconvenience to her, she cannot meet her *prima facie* burden of establishing discrimination based upon "mere inconvenience[.]" *Sanders*, 361 F.3d at 755. Thus, her discrimination claims will be dismissed as a matter of law.

## IV.    Retaliation Claim

Following are the facts which plaintiff alleges in support of her retaliation claim:

> [O]n September 21, 1999, . . . former Treasury Inspector General Jeffery Rush Jr., in an open forum . . . attended by [plaintiff] and others, . . . made comments to the effect that *I'm the final word on most of the discipline around here,* so, if something *is clear cut why even come see me?* . . . Rush then went on to say that when employees file formal actions, such as EEO complaints, it is not just him they are taking on, it is the *entire United States Government* they are taking on. It is noted that the Secretary of the Treasury stipulated to . . . Rush's comments. . . . At the time, [plaintiff] found, and still find[s], Rush's comments to be extremely oppressive, threatening, and intimidating. . . . [A]lso . . . during Rush's tenure . . . , [plaintiff] was denied six promotions, to include those raised in the instant civil action.
>
> In addition . . . [,] current Deputy Inspector General [] Dennis Schindel, prior to Rush's arrival, made comments in an open forum . . . to the effect that he did not know why people kept filing EEO complaints, and that they, the OIG management, were going to do whatever they wanted anyway.

Compl., at ¶¶ 185-203 (emphasis in original). Additionally, plaintiff alleges that she was forced to perform grade 7 level work, which was "a humiliating ordeal for" her. *Id.* at ¶¶ 206-213. Defendant denies that it retaliated against plaintiff in any way. *See* Def.'s Mot., at 22-29.

Courts address retaliation claims under Title VII using a variant of the *McDonnell*

18

*Douglas* test. *See Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002).  To withstand a motion for summary judgment under this framework, plaintiff must establish that (1) she engaged in a protected activity; (2) her employer treated her adversely; and (3) there is a causal connection between the protected activity and the adverse employment action which plaintiff allegedly suffered. *Barnes v. Small*, 268 U.S. App. D.C. 265, 840 F.2d 972, 976 (D.C. Cir. 1988).  "Courts have found that an informal or a formal complaint about, or other opposition to, an employer's practice or act may be *[a] protected [activity]* if the employee reasonably believes such an act to be a violation of the statute in question." *Sherman v. Runyon*, 235 F.3d 406, 409-10 (8th Cir. 2000) (citing *Wentz v. Maryland Casualty Co.*, 869 F.2d 1153, 1155 (8th Cir. 1989) for the proposition that this principal applies to "retaliation claim[s brought] under the ADEA" (emphasis added)); *Evans v. Kansas City, MO. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir. 1995) (same under Title VII).  For the reasons set forth below, plaintiff has failed to establish her *prima facie* case.

## A.    Substandard Work Assignments

With regard to plaintiff's allegation that she was forced to perform grade 7 level work, she has not met her burden because she has not provided the Court with *specific facts* to support this allegation. *But see* Pl.'s Fact Statement, at 1 ("It is [] Plaintiff's understanding that she must set forth *specific facts* . . . to overcome Defendant's motion for summary judgment." (emphasis added)).  As a consequence, the Court views the allegation as conclusory, and thus insufficient to defeat defendant's Motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (citing *Patterson v. General Motors Corp.*, 631 F.2d 476, 482 (7th

Cir. 1980), *cert. denied*, 451 U.S. 914, 101 S. Ct. 1988 (1981)).

**B.      Comments by Treasury Inspectors General**

With regard to plaintiff's allegation that Treasury Inspectors General Rush and Schindel made comments in public forums which she "found, and still find[s], . . . to be extremely oppressive, threatening, and intimidating[,]" Compl., at ¶¶ 206-213, plaintiff has indeed established that she engaged in protected activities.  To be sure, plaintiff claims to have expressed opposition to her employer's practices or acts in at least two public forums. Compl., at ¶¶ 185-203.  The Court views these expressions as "informal" complaints, and thus protected activities. *Sherman*, 235 F.3d at 409-10.  Notwithstanding, plaintiff has failed to identify the particular "adverse personnel action" that allegedly resulted because she engaged in these protected activities, and therefore she has failed to establish her *prima facie* case of retaliation.

As a consequence, defendant is entitled to judgment as a matter of law.

**CONCLUSION**

For the foregoing reasons, defendant's Motion to Dismiss or for Summary Judgment [#14] will be granted.  This case will be dismissed with prejudice.  An appropriate Order accompanies this Memorandum Opinion.

**Date: March 26, 2007**                                          **JOHN GARRETT PENN**
                                                                                          **United States District Judge**

20